In the Matter of NILSA B.B., Appellant, v CLYDE BLACKWELL H., Respondent.

Second Department, December 31, 1981

APPEARANCES OF COUNSEL

*Glickman & McAlevey* (*Anne L. Glickman* of counsel; *Philip E. Greenwald* on the brief), for appellant.

*Laventhall & Zicklin* (*Robert Zicklin* of counsel), for respondent.

### OPINION OF THE COURT

MARGETT, J.

We hold that neither CPLR 301 nor 302 (subd [b]) provides a basis for the exercise of personal jurisdiction by the courts of New York over a respondent in a paternity proceeding who is neither physically present nor domiciled in the State at the time of service of process and who has not consented to the exercise of such jurisdiction.

The petitioner in this paternity proceeding is a resident of New York. She alleges in her petition that respondent is a resident of Missouri. She further alleges that she had a "relationship with sexual intercourse" with respondent from April, 1977 to July, 1979, during which time respondent visited New York approximately twice a month.[1] Petitioner alleges that as a result of an act of sexual intercourse with respondent which occurred in New York, she gave birth to a child on October 14, 1979. Petitioner

---

1. Petitioner does not specify the length of these visits. Respondent alleges that any visits he made to New York during this period were of one to three days' duration.

was a resident of New York throughout her relationship with respondent. Her child was born in New York and, we presume, has continuously resided here with her.

More than 15 months after her alleged relationship with respondent had ended, petitioner commenced this proceeding by causing a summons and petition to be personally delivered to respondent in Missouri on or about November 21, 1980. Respondent replied by moving to dismiss the proceeding for lack of jurisdiction over his person. Rejecting petitioner's contentions that CPLR 301 or CPLR 302 (subd [b]), or both of them, conferred such jurisdiction upon the courts of New York in this proceeding, the Family Court granted respondent's motion and dismissed the petition.

Although we think it probable that due process would not be offended if New York were to assert jurisdiction over the person of the respondent in this proceeding (cf. *Kulko v California Superior Ct.,* 436 US 84), we are constrained to agree with the Family Court that no such assertion of jurisdiction may be derived from the statutes invoked by petitioner.[2]

Accordingly, we affirm its order.

As we read it, CPLR 302 (subd [b]) provides no basis for jurisdiction either in this case or in paternity cases in general. That section reads as follows: "A court in any matrimonial action or family court proceeding involving a demand for support, alimony, maintenance, distributive awards or special relief in matrimonial actions may exercise personal jurisdiction over the respondent or defendant notwithstanding the fact that he or she no longer is a

---

2. Petitioner does not assert that a basis for jurisdiction exists under CPLR 302 (subd [a], par 2), which provides for jurisdiction over a nondomiciliary who "commits a tortious act within the state" with respect to causes of action arising out of such an act. In any event, it has been held that an act of consensual sexual intercourse is not a "tortious act" within the meaning of that provision (*Matter of Anonymous v Anonymous,* 49 Misc 2d 675) and similar provisions in "long-arm" statutes of other States (*Howard v County Ct. of Craighead County,* __ Ark __, 613 SW2d 386; *State ex rel. Carrington v Schutts,* 217 Kan 175; *A.R.B. v G.L.P.,* 180 Col 439). Although there is authority to the contrary, the statutes involved in those cases, for the most part, were either broader in their terms than CPLR 302 (subd [a], par 2) (*Bebeau v Berger,* 22 Ariz App 522; *Backora v Balkin,* 14 Ariz App 569), construed as authorizing jurisdiction to the full extent permitted by due process (*Poindexter v Willis,* 87 Ill App 2d 213; *State ex rel. Nelson v Nelson,* 298 Minn 438), or both (*Gentry v Davis,* 512 SW2d 4 [Tenn]) (but see *Neill v Ridner,* 153 Ind App 149).

resident or domiciliary of this state, or over his or her executor or administrator, if the party seeking support is a resident of or domiciled in this state at the time such demand is made, provided that this state was the matrimonial domicile of the parties before their separation, or the defendant abandoned the plaintiff in this state, or the obligation to pay support, alimony, maintenance, distributive awards or special relief in matrimonial actions accrued under the laws of this state or under an agreement executed in this state."

As petitioner implicitly concedes, since the parties have never been married to each other, CPLR 302 (subd [b]) can support jurisdiction in this case only if the proviso that "the obligation to pay support * * * accrued under the laws of this state" applies.[3] Petitioner contends that this proviso applies because since "each and every relevant circumstance in respect to paternity and support is connected with and occurred in New York State", respondent's obligation to pay support undoubtedly accrued under the laws of the State of New York if it accrued under the laws of any State. On the other hand, respondent effectively contends that the proviso does not apply because, regardless of whether New York law would govern petitioner's claim for relief, no obligation to pay support had accrued as of the time this proceeding was commenced. More specifically, respondent contends that the Legislature intended the proviso at issue to apply only where the subject proceeding seeks enforcement of a pre-existing obligation which has become embodied in an order or judgment of a court. Respondent further contends that since it is only through the subject paternity proceeding that respondent's obligation to pay support may ultimately accrue upon entry of orders of filiation and support, no obligation to pay support on his part could have existed at the time this proceeding was commenced. We agree with respondent's construction of the proviso (accord *Matter of Anonymous v Anonymous,* 104 Misc 2d 611, 614-615; cf. *Lieb v Lieb,* 53 AD2d 67, 70).

---

3. We assume, for purposes of the instant motion, that respondent was formerly a resident of New York, so that he is "no longer" a resident of this State within the meaning of CPLR 302 (subd [b]).

Although the language of the proviso is not completely free from ambiguity, at least when it is examined standing alone, that language is more supportive of the interpretation urged by respondent. It bears emphasis that the proviso speaks of an "obligation" having accrued and not a "cause of action". A cause of action is generally said to have accrued when the right to sue on the cause of action has become vested (*Matter of City of White Plains v City of New York,* 63 AD2d 396, 403). For example, in a paternity case, the cause of action accrues upon pregnancy (although the limitations period does not begin to run until the birth of the child) (Family Ct Act, § 517). Thus, if the proviso spoke of a "cause of action" instead of an "obligation", we might well reach a different result. However, it seems apparent that an "obligation" cannot be said to have "accrued" "under the laws" of a State before or at the same time that the "cause of action" seeking to impose that obligation has accrued. An "obligation" so accrues only after the cause of action has been found to have merit. In this paternity case, "[o]nly after [the existence of the paternal tie] is determined * * * would respondent's obligation have 'accrued'" (see *Matter of Anonymous v Anonymous,* 104 Misc 2d 611, 615, *supra*).

Our conclusion that an "obligation to pay support" has not "accrued" in a paternity case, within the meaning of CPLR 302 (subd [b]), at least until the parental tie has been determined to exist, is also supported when the relevant language of the proviso at issue is considered in the context of CPLR 302 (subd [b]) as a whole. As explained by Weinstein-Korn-Miller (NY Civ Prac, vol 1, par 302.19, p 3-137), the other provisos of that section would be rendered mere surplusage if we were to accept the kind of construction offered by petitioner: "Surely [the proviso in question] cannot apply whenever a wife who is a resident or domiciliary of New York seeks support, alimony or maintenance, because in that event the other provisions of subdivision (b) are superfluous. Perhaps what was intended was a preexisting obligation to pay on the part of the defendant before he left the state, as, for example, an outstanding Family Court order."

Moreover, we note that, as a general matter, a father's obligation to pay child support does not necessarily follow upon the mother's becoming pregnant or upon the birth of the child. The child may not be carried to term or the father may be indigent. Therefore, even if we were to accept petitioner's unstated premise that "the obligation * * * accrued" upon her becoming pregnant or upon the birth of her child, it would not necessarily follow that "the obligation to pay support * * * accrued" within the meaning of CPLR 302 (subd [b]) upon the happening of either of those events.

Finally, the legislative history of CPLR 302 (subd [b]) also supports our construction of that section. The legislative memorandum of Assemblyman Albert H. Blumenthal, a sponsor of the bill which was enacted as CPLR 302 (subd [b]), states as follows, in pertinent part: "This bill gives New York Courts personal jurisdiction over non-resident defendants in support or alimony cases where the party seeking support lives in this State and the parties were married and living in this State before separation or the defendant abandoned the plaintiff in this State *or an original order for support or alimony was awarded in this State*" (NY Legis Ann, 1974, p 41, emphasis added). The memorandum contains no reference to paternity proceedings.

In sum, since "the obligation to pay support" had not "accrued under the laws of this state" at the time this proceeding was commenced, the courts of New York had no jurisdiction over respondent's person under CPLR 302 (subd [b]).[4]

---

4. We note that at least one State has left no doubt that it intends to include paternity cases within the reach of its "long arm" statute. Section 60-308 (subd [b], par [10]) of the Kansas Code of Civil Procedure provides as follows:

"Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts * * *

"(10) Performing an act of sexual intercourse within the state with a person in this state which results in the conception of a child, as to an action against a person seeking to adjudge such person to be a parent of the child and as to an action to require such person to provide support for the child as provided by law, if the other party to the act of sexual intercourse or the child continues to reside in the state."

Petitioner also seeks to derive jurisdiction over respondent's person from CPLR 301. That section, which became effective along with CPLR 302 on September 1, 1963, provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Petitioner contends that respondent's contacts with New York are sufficient to support jurisdiction over respondent's person under CPLR 301, even if those contacts are unrelated to the cause of action asserted by petitioner. Alternatively, petitioner contends that if CPLR 301 requires that her cause of action arise out of respondent's contacts with New York, then she has also met that test.

Respondent admits that from April, 1977 to July, 1979 he was an officer and employee of, *inter alia,* the H---- Book Company, Inc., a Missouri corporation, which is not authorized to do business in New York. He further admits that, in his employment capacity, he visited New York approximately every month from 1977 to 1979 in order to determine whether various New York publishers had any books which the H---- Book Company might be interested in buying for resale to libraries or schools. He alleges, however, that the company's book purchases were not consummated in New York, but "occurred by the transaction of mail from New York to the H---- Book Company, Inc. office in Missouri." According to respondent, these periodic visits to New York for the sole purpose of soliciting business were the sole contacts that the H---- Book Company had with New York. He denies that the National Library Service, Inc., of which he was also an officer and employee, did any business with any New York company.

Respondent also contends that he has continuously resided in Missouri and held a Missouri driver's license since 1957, and that he has voted there since 1958.

Petitioner alleges that on his visits to New York, respondent was conducting his own business and was not an employee of a corporation. She points to a loan application signed by respondent in which he described himself as the self-employed owner of the H---- Book Co. She also alleges that he used business credit accounts for personal purposes, represented her to New York businessmen as "his

New York contact", and paid her moneys through his business payroll. However, there is no allegation by petitioner that respondent's business activities in New York continued up until the time he was served with process in Missouri.

Petitioner also offered a deed, dated August 20, 1979, by which respondent deeded premises located in New York to petitioner and himself "as joint tenants by the entirety". Those premises are presently occupied by petitioner and her child. On that deed and an accompanying mortgage, respondent was stated to be a resident of those premises. In addition, in an affidavit dated December 26, 1980, petitioner alleged that respondent had importuned her in New York to have his child. She also alleged that he had supplied her with moneys "until recently." Petitioner does not contend that respondent was a domiciliary of New York at the time he was served with process.

The Family Court refused to recognize CPLR 301 as a basis for personal jurisdiction over respondent on the stated ground that "the cause of action in this proceeding is totally unrelated to the respondent's alleged contacts" with New York. We agree with the Family Court that CPLR 301 does not provide a basis for jurisdiction in this case, but on a somewhat broader ground. In our view, that section does not provide for jurisdiction in a paternity proceeding over a nondomiciliary who is served outside the State, regardless of whether the cause of action asserted in the petition is regarded as related to his personal contacts with New York.[5]

We observe preliminarily that, unlike petitioner apparently does, we do not read CPLR 301 as granting to the courts of New York all jurisdiction over persons which they might exercise in a manner consistent with due process.[6] In *Feathers v McLucas* (15 NY2d 443, 459), the Court of Appeals rejected the Appellate Division's construction of

5. In any event, to the extent that the relationship between the cause of action and respondent's contacts with the State is determinative, we are inclined to agree with the Family Court that the cause of action asserted does not arise out of respondent's contacts with New York, so that jurisdiction is lacking even under the alternate test proffered by petitioner.

6. Compare, for example, the language of section 410.10 of the California Code of Civil Procedure: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

CPLR 302 as having "'merely codified the minimum contacts test'" established by Supreme Court decisions interpreting the Federal due process clause. It phrased the question before it as follows (pp 459-460): "the question presented is not * * * whether the Legislature *could* constitutionally have enacted legislation expanding the jurisdiction of our courts to the extent determined by the Appellate Division or whether, indeed, the Legislature *should* have done so * * * but whether the Legislature *did,* in fact, do so." (See, also, *McGowan v Smith,* 52 NY2d 268, 274; *Simonson v International Bank,* 14 NY2d 281, 287-288.) We perceive no reason to read CPLR 301 any more expansively. Indeed, if CPLR 301 had been intended to authorize jurisdiction coextensive with that permitted under due process, "it would not have been necessary to draft CPLR 302" (1 Weinstein-Korn-Miller, NY Civ Prac, par 301.10, p 3-20). Instead, we believe that, read in the manner most favorable to petitioner, "[t]he word 'might' in CPLR 301 is more accurately construed to cover the principles applicable to any line of New York cases even though the precise situation before the court has never previously been dealt with." *(Id.,* p 3-21.)

Further, in determining the extent to which CPLR 301 may be relied upon to provide a basis for jurisdiction, we must bear in mind that as a general matter it is more appropriate for the Legislature than the courts to formulate previously unrecognized bases for jurisdiction (see *Simonson v International Bank,* 14 NY2d 281, 286-288, *supra*). This is particularly true where the Legislature has had the opportunity to specifically provide for jurisdiction under particular circumstances and has not done so, even though it has specifically expanded jurisdiction in a closely related area (see *Feathers v McLucas,* 15 NY2d 443, 461-462, *supra; Simonson v International Bank, supra,* p 288).

Petitioner contends that because of the combination of his business and personal contacts with New York, respondent "is sufficiently 'present' in New York State to establish himself as subject to in personam jurisdiction for purposes of any cause of action" pursuant to CPLR 301, notwithstanding that respondent was neither actually present in New York nor a domiciliary thereof when served.

However, petitioner cites no decisional or statutory authority in existence immediately prior to the enactment of the CPLR which indicates that jurisdiction over respondent's person might then have been exercised in this case. We decline to engage in the kind of judicial lawmaking that would be required in order to accept this contention.

It is quite apparent that petitioner's allegations, which we deem to be true for purposes of this motion, do not establish jurisdiction over respondent's person under any of the bases for jurisdiction recognized by our common law before the date of the enactment of the CPLR, such as physical presence within the State (see *Bartlett v Spicer,* 75 NY 528, 534), domicile (see *Hunt v Hunt,* 72 NY 217, 239) or consent (see, e.g., *Gilbert v Burnstine,* 255 NY 348). With respect to the last-mentioned basis, we have held that the mere transaction of business in a State by a natural person "does not imply consent to be bound by the process of [the] courts" of that State *(Skandinaviska Granit Aktiebolaget v Weiss,* 226 App Div 56, 59; see, also, *Pope v Heckscher,* 266 NY 114).

These common-law bases for jurisdiction derived from a recognition that, absent the consent of the person sued, "[t]he foundation of jurisdiction is physical power" (*McDonald v Mabee,* 243 US 90, 91; *Rawstorne v Maguire,* 265 NY 204, 208). As explained by the Court of Appeals in *Rawstorne v Maguire (supra,* p 208): "The sovereignty of the State extends only as far as its territorial boundaries. Where there is 'bodily presence' within the boundaries of the State there is opportunity for the exercise of the State's sovereignty, even though bodily presence is not accompanied by any intention to remain there permanently. So, too, domicile within the State may establish a status within the territorial limits of sovereignty which also gives opportunity for the exercise of that sovereignty."

As might be inferred from this statement, even *Tauza v Susquehanna Coal Co.* (220 NY 259), which expanded jurisdiction over foreign corporations, signaled no retreat from the common-law requirement that a natural person be either within the State or a domiciliary thereof at the time of service in order for there to be jurisdiction over his person absent his consent.

In *Tauza* (*supra,* p 268), it was held that a foreign corporation that was "engaged in business" within New York could be sued in New York regardless of whether the cause of action was related to the business carried on in the State. But *Tauza* was not based upon any "minimal contacts" test of the sort suggested by petitioner. *Tauza* was simply based on the principle that a corporation, which can act only through its agents, is actually present in a State when it is engaged in business there through them. "The essential thing is that the corporation shall have come into the state. When once it is here, it may be served; and the validity of the service is independent of the origin of the cause of action" (*Tauza v Susquehanna Coal Co., supra,* pp 268-269).[7]

Well after *Tauza* was decided, the Law Revision Commission concluded that "[t]he existing procedural provisions in this state *** afford no means of obtaining personal judgment against a nonresident individual doing business in this state through an agent or local manager, who stays, himself, without the jurisdiction" (1940 Report of NY Law Rev Comm, Service of Process on Nonresident Individuals Doing Business Within the State, pp 117, 119).

In light of the settled state of the decisional law, any significant relaxation of the strictures of the common-law bases for personal jurisdiction over nondomiciliary natural persons which occurred before the enactment of the CPLR was a matter of legislative action.

Thus, the Law Revision Commission's report cited above led to the enactment of section 229-b of the former Civil Practice Act, which, as enacted (L 1940, ch 99), authorized jurisdiction over the person of a defendant who was "engage[d] in business" in the State. "in any action *** arising out of such business" where process could be served

---

7. Even if we were to apply a kind of "doing business" test to determine whether the respondent was sufficiently "present" in New York to enable our courts to have jurisdiction over his person, it is doubtful that jurisdiction would exist on the facts of this case, as alleged by petitioner (see *Meunier v Stebo, Inc.,* 38 AD2d 590, 591). In this respect, we take particular note of petitioner's failure to allege that any of respondent's business activities were conducted in New York after July, 1979, more than 15 months before respondent was served with process. We also note that there is no allegation that respondent ever set foot in New York after August, 1979, except, perhaps, for the allegation that respondent importuned petitioner to have their child in New York at some unspecified time.

by delivery to the "person in charge of such business within th[e] state" and mailing to the defendant. But neither this provision, even as subsequently amended (L 1941, ch 455), nor any other enactment continued in effect by CPLR 301 authorized jurisdiction over a nondomiciliary in the circumstances present in this case (see, e.g., Insurance Law, former § 59-a; Vehicle and Traffic Law, former § 52).

As already indicated, the state of the law was not changed by the enactment of CPLR 302. In that section, the Legislature carefully set forth the circumstances under which a New York court may exercise jurisdiction over nondomiciliary natural persons, not only as a general matter (see CPLR 302, subd [a]),[8] but also with respect to "family court proceeding[s]" (see CPLR 302, subd [b]), which are involved in this case. Since it was far from apparent under the law as it existed immediately prior to the enactment of CPLR 301 and CPLR 302 that personal jurisdiction existed over nondomiciliaries such as respondent, we think the Legislature would have specifically authorized such jurisdiction in CPLR 302 (subd [a]) or (subd [b]), particularly the latter, had it intended for it to exist under the CPLR. In light of the Legislature's failure to do so, we are unwilling to read such an authorization into the broad language of CPLR 301 which, unlike CPLR 302, is not addressed to the particular topic of jurisdiction

---

8. CPLR 302 (subd [a]) became effective on September 1, 1963, as did CPLR 301. As amended, it provides as follows:

"§302. Personal jurisdiction by acts of non-domiciliaries

"(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

"1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

"2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

"3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

"4. owns, uses or possesses any real property situated within the state."

CPLR 302 (subd [b]) became effective on June 7, 1974.

over nondomiciliaries (see *Feathers v McLucas,* 15 NY2d 443, 461-462, 464, *supra*).

We are not unmindful of *ABKCO Inds. v Lennon* (52 AD2d 435), in which the Appellate Division, First Department, held that CPLR 301 authorizes a New York court to assume jurisdiction over a natural person who is "doing business" in the State in a commercial action alleging causes of action that did not arise out of business done in New York, even though the defendant was neither served nor domiciled in New York. The majority opinion in *ABKCO* appears to proceed from the fundamental premise that CPLR 301 is a grant of jurisdiction, coextensive with that which is constitutionally permitted. For reasons already stated, we think that premise is incorrect. In addition, we note that although the advisory committee report cited in *ABKCO* (p 440) stated that one of the drafters' objectives in drafting, *inter alia,* CPLR 301 and 302, was "to make it possible for a litigant in the New York courts to take full advantage of the State's constitutional power over persons and things", the draft of CPLR 301 was then more broadly worded than CPLR 301 was when it was eventually enacted. The draft then read as follows: "A court may exercise jurisdiction over persons, property, or status as might have been exercised heretofore *and as provided in this article or as otherwise authorized by law.*" (Second Prelim Report of Advisory Comm on Practice and Procedure, p 37, emphasis added).

The emphasized portion of the draft bill was never enacted. Moreover, CPLR 302 has not received the expansive reading that the advisory committee might have hoped it would (see *Feathers v McLucas,* 15 NY2d 443, *supra*).

Even assuming that *ABKCO* was correctly decided, it appears that that case has no application to cases such as this one where the cause of action asserted against one who is allegedly "doing business" in the State is not commercial in nature (see *Matter of Hammett v Hammett,* 74 AD2d 540, 541 [dissenting memorandum]).

Petitioner also contends that even if CPLR 301 does not authorize jurisdiction over all causes of action against respondent based upon the combination of his business and personal contacts with New York, it does authorize juris-

diction over any causes of action that "arise out of" those contacts. Petitioner further contends that her paternity action is such a cause of action. For reasons already stated, we decline to intrude upon the province of the Legislature and judicially establish such a test. The Legislature has authorized jurisdiction over a nondomiciliary who transacts business in the State where the cause of action arises out of the transaction of that business (CPLR 302, subd [a], par 1), but it has gone no further. "Any plea for further expansion of [the statutory bases for jurisdiction], however desirable such expansion may seem, is a matter for the Legislature rather than the courts" (*Feathers v McLucas,* 15 NY2d 443, 464, *supra*).

LAZER, J. P. (concurring). I voice separate concurrence mainly to note that imminent retirement renders Justice MARGETT's scholarly opinion the last of the many that he has provided for this court. It is a loss from which there cannot be quick recovery. I would be remiss, however, if I did not relate my discomfiture at the inability of New Yorkers to invoke a "long-arm" jurisdiction which the Constitution would permit but which our statutory scheme prevents (see *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443).

There is every good reason for New York's "long-arm" scheme to be as enveloping as the Constitution allows, yet despite the broad invitation of the " 'fair play and substantial justice' " language of *International Shoe Co. v Washington* (326 US 310, 316), the State continues to adhere to a more restrictive scheme which in many situations prevents New York residents from litigating here what properly should be litigated here. Petitioner should not be compelled to pursue her errant lover to Missouri to obtain justice.

Hopefully, the Legislature will give some attention to the problem.

LAZER, J. P., RABIN and COHALAN, JJ., concur with MARGETT, J.; LAZER, J. P., with a separate concurring opinion, in which COHALAN, J., concurs.

Order of the Family Court, Rockland County, dated April 24, 1981, affirmed, without costs or disbursements.