**BEACON ENTERPRISES, INC.,**
**Plaintiff-Appellee,**

v.

**Mary Rose MENZIES,**
**Defendant-Appellant.**

**No. 329, Docket 82–7383.**

United States Court of Appeals,
Second Circuit.

Submitted March 16, 1983.

Decided Aug. 12, 1983.

Mary Rose Menzies, pro se.

Myron Amer, Bauer & Amer, Mineola, N.Y., for plaintiff-appellee.

Before MANSFIELD, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

Appellee Beacon Enterprises, Inc. (Beacon), a New York corporation, commenced this diversity action against *pro se* appellant Mary Rose Menzies, a resident of California, seeking a declaratory judgment that certain of its products did not infringe Menzies' trademarks. Personal jurisdiction over Menzies in the Southern District of New York was premised on Beacon's allegation that Menzies "is regularly doing business within the City and State of New York" and that "a part of that business is directly related to the subject matter of the present action." ¶ 2 Complaint. In her motion to dismiss and her answer, Menzies asserted, *inter alia,* that the court lacked personal jurisdiction over her in New York. Without notice to the parties, the district court treated Menzies' *pro se* motion to dismiss as a motion for summary judgment, determined that it had personal jurisdiction over Menzies, and granted summary judgment on the merits for Beacon, the nonmoving party. We reverse the district court's judgment because, at the early stage this litigation was terminated, (1) Beacon had not established the court's personal jurisdiction over Menzies under either New York's general jurisdictional statute, N.Y.Civ. Prac.Law § 301 (McKinney 1972), or the relevant provision of New York's long-arm jurisdictional statute, N.Y.Civ.Prac.Law § 302(a)(1)(McKinney Supp. 1982–83), and (2) Menzies was not afforded an adequate opportunity to offer evidence in opposition to summary judgment. We remand for further proceedings on the jurisdictional question and, if necessary, on the merits.

## I

The facts, garnered from an undeveloped record, are stated here as they are set forth in the parties' pleadings and at a brief hearing held on April 2, 1982. Beacon markets a line of so-called "exercise and weight reducing devices," including a garment advertised as the "Saunette Suit." This vinyl fabric suit retains heat and moisture and, according to Beacon, "promotes weight reduction much in the way that a sauna achieves such result[s]." ¶ 5 Complaint. Menzies advertises and sells a similar garment labelled "Sauna Suit," which, according to her advertisements, "works like a portable sauna." Menzies apparently runs her small mail order business from her California home. She has a federally registered trademark for "Sauna Suit," as well as for "Super-Sauna" and "Sauna Girdle," other weight reducing garments. In addition, Menzies owns federal copyrights for the label and packaging of the "Sauna Suit," "Super Sauna" and "Sauna Girdle."

The present controversy arose when Menzies sent a letter dated December 11, 1981 from California to Beacon at its New York City headquarters. Menzies' letter: (1) informed Beacon of her trademarks and copyrights in "Sauna Suit," "Super-Sauna" and "Sauna Girdle;" (2) alleged that Beacon's use of the mark "Saunette Suit" violated federal copyright and trademark law; and (3) threatened that "[i]f your company does not cease and desist, appropriate legal action will be taken." Less than two weeks later, on December 23, 1981, Beacon filed its complaint in the instant action. Although devoid of statutory citations, Beacon's jurisdictional allegations apparently sought to place Menzies within the scope of both New York's general jurisdictional statute, N.Y. Civ.Prac.Law § 301 (McKinney 1972)[1] and the relevant section of New York's long-arm jurisdictional statute, N.Y.Civ. Prac.Law § 302(a)(1) (McKinney Supp. 1982–83).[2]

Beacon's substantive claim was that Menzies "does not possess any exclusive right in or to the use of the words 'saunette suit,' which are the descriptive words of the language, in regard to the sale of a sauna-type weight reducing garment." Beacon also alleged that the packaging of its "Saunette Suit" bore no resemblance to that of Menzies' products and that Beacon's marketing of its product did not cause confusion, mistake or deception. Beacon further claimed that Menzies' December 11 letter created a sufficient controversy to warrant a declaration of the parties' rights and an order enjoining Menzies from making any charges of trademark infringement against Beacon or its agents, distributors or customers.

On February 10, 1982 Menzies, *pro se,* filed an answer denying the primary allegations contained in the complaint. Menzies specifically denied any business activity in New York and stated, "[d]efendant has no manufacturing facilities, no sales offices, no advertising offices, no agents or distributors in the Southern District of New York or elsewhere in the state of New York at this time." By her answer Menzies further asserted insufficiency of service of process, improper venue and failure to state a claim. She alleged as "affirmative defenses" that Beacon's marketing of the "Saunette Suit" violated her trademarks and copyrights and constituted unfair competition. Although Rule 12(b) of the Federal Rules of Civil Procedure requires that a motion to dismiss be filed prior to filing of a responsive pleading, Menzies did not file her "motion to dismiss" until March 4, 1982. In that motion, she alleged lack of personal jurisdiction, improper venue, lack of subject matter

---

1. This section provides: "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."

2. Section 302(a)(1) of the CPLR entitled, "Personal jurisdiction by acts of non-domiciliaries," provides in pertinent part:
 (a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state.

jurisdiction (because the $10,000 jurisdictional amount had not been met) and failure to state a claim.

On March 30, 1982 Menzies commenced a *pro se* action in the United States District Court for the Central District of California (the California action) against Beacon and Thrifty Corporation, a customer of Beacon. In the California action, Menzies alleged that Beacon and Thrifty were violating her federal trademarks and copyrights and engaging in unfair competition by marketing the "Saunette Suit." Menzies sought injunctive relief and damages. Beacon responded to Menzies' suit by filing a motion in the United States District Court for the Southern District of New York seeking an injunction against the California action.

On April 2, 1982 the New York district court held a consolidated pretrial conference and hearing on the motion to dismiss. Menzies, still appearing *pro se,* personally attended. On several occasions, the court asked the parties to produce samples of their products and trade dress, but Menzies had not brought any samples with her from California.[3] Menzies was able only to produce an advertising insert describing and depicting the "Sauna Suit." Counsel for Beacon produced a packaged sample of its product.

Several times during this hearing Menzies sought to interject her jurisdictional defense. When the court finally addressed the issue, Menzies asserted that her products had been sold in New York only by mail. She also stated that Beacon was the only entity to which she had written requesting cessation of infringement. The only evidence produced by Beacon that was relevant to the issue of Menzies' business activity in New York was her "cease and desist" letter and an unsupported statement by Beacon's counsel that "a colleague of my client who is selling a similar product [in an unspecified location] received similar letters, and his customers received similar let-

ters." At the close of the hearing, the judge informed Menzies: "I have a very good understanding of what your product looks like. You have told me it is wrapped in plastic and that it has the mark printed on the outside and that it has this insert that has been marked as an exhibit here today.... I am going to take care of your case on the merits. If you don't like the result, you may apply to the Court of Appeals."

By an order filed April 27, 1982, the district court construed Menzies' motion to dismiss as one for summary judgment and granted summary judgment for Beacon, the nonmoving party. The court determined that it had personal jurisdiction over Menzies because "it was apparent on the oral argument that sufficient activity takes place in New York with respect to defendant's product." The court further found that there was no trademark infringement by Beacon, stating: "Certainly no confusion can follow between the relatively weak mark of 'Sauna Suit' and the equally weak mark of 'Saunette Suit,' particularly where Beacon Enterprises' name appears clearly on its own product." Consistent with the memorandum-decision, judgment was entered (1) declaring that "a product sold as 'Saunette Suit' and in association with the name Beacon Enterprises is not trademark infringement of any trademarks of defendant, nor gives rise to consumer confusion with any product of defendant" and (2) enjoining Menzies from maintaining the California action.

Menzies' timely appeal to this Court followed.[4]

## II

### A. *Personal Jurisdiction*

 Our examination of the record, which includes the transcript of the hearing below, compels us to reverse the district court's finding of personal jurisdiction over

---

**3.** The district court initially suggested that Menzies mail a product sample to the court from California but later informed Menzies that a sample was unnecessary.

**4.** Menzies' application to this Court for a stay pending appeal was denied on June 2, 1982.

Menzies. As plaintiff, Beacon bore the ultimate burden of proving the court's jurisdiction by a preponderance of the evidence. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 92 (2d Cir.1975). For a plaintiff to prevail on summary judgment when defendant contests personal jurisdiction, his burden is even greater; he must demonstrate that there is no genuine issue as to any material fact on the jurisdictional question.[5] *See generally American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981); *Heyman v. Commerce And Industry Insurance Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Id.* at 1320; *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). If the party opposing summary judgment "generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). Here, the district court granted summary judgment for Beacon on the basis of plaintiff's unsupported allegations that Menzies conducted sufficient business activity in New York related to the present cause of action. Whether measured by a "preponderance of evidence" standard or one of "no genuine issue of material fact," Beacon failed to demonstrate personal jurisdiction over Menzies in New York.

■ Personal jurisdiction over a defendant in a diversity action in the United States District Court for the Southern District of New York is determined by reference to the relevant jurisdictional statutes of the State of New York. *See United States v. First National City Bank,* 379 U.S. 378, 381–82, 85 S.Ct. 528, 530–31, 13 L.Ed.2d

365 (1965); *see also Braman v. Mary Hitchcock Memorial Hospital,* 631 F.2d 6, 7 (2d Cir.1980) (diversity case applying Vermont law); *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir.1963) (en banc). We turn to an examination of the only jurisdictional bases alleged by Beacon—sections 301 and 302(a)(1) of the New York Civil Practice Law.

1. *N.Y.Civ.Prac.Law § 301: "Doing Business"*

■ Under the New York courts' interpretation of section 301, a non-domiciliary subjects herself to personal jurisdiction in New York with respect to *any* cause of action if she is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of [her] 'presence' in this jurisdiction." *Simonson v. International Bank,* 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 429 (1964), *quoted in McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981); *accord Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 953 (2d Cir.1967). The non-domiciliary must be "doing business" in New York " 'not occasionally or casually, but with a fair measure of permanence and continuity.' " *Laufer v. Ostrow,* 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982) (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)); *Katz Communications, Inc. v. Evening News Ass'n,* 705 F.2d 20 (2d Cir.1983); *accord McShan v. Omega Louis Brandt et Frere, S.A.,* 536 F.2d 516, 517 (2d Cir.1976).

■ There is no evidence that Menzies has ever physically appeared in New York to conduct business. The only contacts by Menzies with New York set forth in the record are (1) her "cease and desist" letter to Beacon, and (2) an unspecified number of mail order sales of her products in New

---

5. We recognize that a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), rather than a motion for summary judgment, Fed.R.Civ.P. 56, is the more appropriate procedural vehicle for contesting personal jurisdiction. *See Heyward*

*v. Public Housing Administration,* 238 F.2d 689, 694 (5th Cir.1956); 10 C. Wright, A. Miller, M. Kane, Federal Practice and Procedure, § 2713 (2d ed. 1983).

York. These contacts are insufficient to satisfy section 301's "doing business" test. The shipment of goods into New York does not *ipso facto* constitute "doing business." *See Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc.,* 495 F.Supp. 253, 257 (S.D. N.Y.1980); *Selman v. Harvard Medical School,* 494 F.Supp. 603, 611 & n. 4 (S.D.N. Y.), *aff'd mem.,* 636 F.2d 1204 (2d Cir.1980); *cf. Kramer v. Vogl,* 17 N.Y.2d 27, 30–32, 267 N.Y.S.2d 900, 902–04, 215 N.E.2d 159, 161–62 (1966) (mere shipment of goods into New York insufficient to meet lesser standard of "transacting business" under section 302(a)(1)).

■ Even if we are to assume that Menzies solicited those New York mail order sales by advertisements reaching New York, section 301's jurisdictional requirements remained unsatisfied. Although "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business,'" *Aquascutum of London, Inc. v. S.S. American Champion,* 426 F.2d 205, 211 (2d Cir.1970); *see Laufer v. Ostrow,* 55 N.Y.2d at 310, 449 N.Y.S.2d at 459, 434 N.E.2d at 694–95, Beacon has not come close to demonstrating "substantial solicitation" by Menzies. To sustain personal jurisdiction, New York courts "require 'substantial solicitation' that is carried on with a 'considerable measure of continuity and from a permanent locale' within the state." *Stark Carpet Corp. v. M-Geough Robinson, Inc.,* 481 F.Supp. 499, 505 (S.D.N.Y.1980) (quoting *Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 429, 431, 260 N.Y.S.2d 625, 627–28, 208 N.E.2d 439, 441 (1965)); *see Ring Sales Co. v. Wakefield Engineering, Inc.,* 90 A.D.2d 496, 497, 454 N.Y.S.2d 745, 746 (2d Dep't 1982). The record does not permit an inference of such extensive solicitation. The delivery in New York of one letter threatening litigation against plaintiff adds little to the accumulation of Menzies' contacts with the forum and to her fictional "presence." *Cf. Activox, Inc. v. Envirotech Corp.,* 532 F.Supp. 248, 249 (S.D.N.Y.1981) (defendant's meeting with plaintiff in New York to discuss related litigation does not satisfy section 301).

Accumulating all of Menzies' contacts with the forum set forth in the record, we conclude that she is at most only "occasionally" doing business in New York and is not "engaged in such a continuous and systematic course of 'doing business'" in New York as to subject her to personal jurisdiction under section 301. *Cf. Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d at 953 ("occasional visits of [defendant's vice-president] to New York to solicit business and to negotiate contracts for [defendant] were not sufficiently regular or extensive for the New York courts to hold that [defendant] is 'doing business' in the state."); *Dunn v. Southern Charters, Inc.,* 506 F.Supp. 564, 567 (E.D.N.Y.1981) (solicitation of orders for defendant's products through independent agents, brochures and trade magazines insufficient under section 301 in suit by purchaser); *Selman v. Harvard Medical School,* 494 F.Supp. at 610–11 (nonresident defendant testing company's mailing of standardized admission tests and applications to New York medical schools does not satisfy section 301 in suit by examinee).

### 2. *N.Y.Civ.Prac.Law § 302(a)(1)*

■ A defendant who is not "doing business" in New York within the meaning of section 301 may be sued in New York on a lesser showing of forum contacts if the cause of action arises from those contacts. A defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state" subjects himself to personal jurisdiction under N.Y.Civ.Prac.Law § 302(a)(1) (McKinney Supp. 1982–83) in any action arising from the transaction of business or contracting to supply goods and services in New York. *See generally Galgay v. Bulletin Co.,* 504 F.2d 1062, 1064 (2d Cir.1974); *George Reiner and Co. v. Schwartz,* 41 N.Y.2d 648, 653–54, 394 N.Y.S.2d 844, 847–48, 363 N.E.2d 551, 554–55 (1977). As previously stated, Menzies' only established forum contacts are (1) her shipment of an unspecified number of goods into New York, and (2) her "cease and desist" letter. Turning first to Menzies' shipment of goods into New

York, we will assume that Menzies' New York sales place her within section 302(a)(1)'s language directed to a defendant who "contracts anywhere to supply goods or services in the state." However, we fail to find a sufficient nexus between Menzies' shipment of goods into New York and Beacon's cause of action.

The New York Court of Appeals has recently observed that "[e]ssential to the maintenance of a suit against a non-domiciliary under CPLR 302 (subd [a], par. 1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon .... Indeed, it is this basic requirement that differentiates the long-arm authority conferred by CPLR 302 (subd [a], par. 1) from the more traditional authority of the New York courts under CPLR 301 to exercise in personam jurisdiction over foreign defendants who are 'present' within the State by virtue of their 'doing business' here." *McGowan v. Smith*, 52 N.Y.2d at 272, 437 N.Y.S.2d at 645, 419 N.E.2d at 323. The foreign defendant's transaction of business in New York must "bear a substantial relationship to the transaction out of which the instant cause of action arose." *Id.* We agree with the New York courts' interpretation of section 302(a)(1) which requires "a direct relation between the cause of action and the in-state conduct" as "an important condition of acquiring jurisdiction over the non-domiciliary defendant."[6] *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357 (2d Cir.1970). This requirement of a strong nexus applies with equal force to the more recently added clause of N.Y.Civ.Prac.Law § 302(a)(1) permitting exercise of jurisdiction over a defendant who "'contracts anywhere to supply goods or services in the state.'"[7] *See West Mountain Corp. v. Seasons of Leisure International, Inc.*, 82 A.D.2d 931, 440 N.Y.S.2d 729, 730 (3d Dep't 1981) (quoting N.Y.Laws 1979 ch. 252, § 1).

Beacon's defensive declaratory judgment action is not one that the courts of New York have regularly linked to section 302(a)(1) jurisdiction. Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, *see, e.g., Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 456, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (1965); *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 381–82, 283 N.Y.S.2d 34, 37, 229 N.E.2d 604, 607 (1967), or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York. These circum-

---

6. We need not decide whether the parameters of jurisdiction under section 301 are as wide for non-domiciled natural persons as they are for non-domiciled corporations. *See* 1 J. Weinstein, H. Korn, A. Miller, New York Civil Practice ¶ 301.15 (1983). *Compare Nilsa B.B. v. Clyde Blackwell H.*, 84 A.D.2d 295, 301–07, 445 N.Y.S.2d 579, 582–87 (2d Dep't 1981), *with ABKCO Industries, Inc. v. Lennon*, 52 A.D.2d 435, 439–40, 384 N.Y.S.2d 781, 783–84 (1st Dep't 1976). Even applying the standards governing jurisdiction over corporate defendants, personal jurisdiction over Menzies was not established.

Moreover, in the present case, it is unnecessary to determine whether the exercise of personal jurisdiction would comport with federal constitutional standards of due process, *see, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), since a statutory basis for jurisdiction has not been established. *See Galgay v. Bulletin Co.*, 504 F.2d at 1066. As interpreted by the New York state courts, N.Y.Civ.Prac.Law

§§ 301 and 302 do not extend personal jurisdiction to the limits of due process. *See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 459–60, 261 N.Y.S.2d 8, 20–21, 209 N.E.2d 68, 77–80 (1965) (CPLR 302); *Nilson B.B. v. Clyde Blackwell H.*, 84 A.D.2d at 301–05, 445 N.Y.S.2d at 584–86 (CPLR 301 and 302).

7. In 1979 the New York Legislature amended CPLR 302(a)(1) to add the clause permitting the exercise of personal jurisdiction over a non-domiciliary who "contracts anywhere to supply goods or services in the state." 1979 N.Y.Laws ch. 252 § 1; *see McGowan v. Smith*, 52 N.Y.2d at 271 n.2, 437 N.Y.S.2d at 644 n.2, 419 N.E.2d at 322 n. 2. Menzies' shipment of goods into New York appears to place her within the ambit of that clause. *See West Mountain Corp. v. Seasons of Leisure International, Inc.*, 82 A.D.2d at 931, 440 N.Y.S.2d at 730; *Pyramid Co. v. Original Great American Chocolate Chip Cookie Co.*, 102 Misc.2d 1056, 1058–59, 425 N.Y.S.2d 230, 232 (N.Y.Sup.Ct.1980).

stances are obviously not present here. Beacon does not allege that Menzies' shipments of goods into New York are in any way injurious to it. In fact, Menzies' shipments of goods into New York are irrelevant to Beacon's declaratory judgment action and Beacon's cause of action would exist regardless of whether Menzies' products were sent to New York. The present controversy arose as a result of Menzies' "cease and desist" letter, not her New York commercial activity. Accordingly, we find no "articulable nexus," *McGowan v. Smith*, 52 N.Y.2d at 272, 437 N.Y.S.2d at 645, 419 N.E.2d at 323, much less a "substantial relationship," *id.*, between Menzies' shipment of goods into New York and Beacon's cause of action. *Cf. Fontanetta v. American Board of Internal Medicine*, 421 F.2d at 357 (insufficient nexus where examinee's cause of action arises from oral examination given outside of New York although related written examination was given in New York); *Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317, 323 (2d Cir.1964) (insufficient nexus where plaintiff purchased tickets for bus from agent in New York and sued in tort based on accident in Arizona); *McGowan v. Smith*, 52 N.Y.2d at 272, 437 N.Y.S.2d at 645, 419 N.E.2d at 323 (defendant exporter's visits to New York to conduct general marketing research do not "bear a substantial relationship" to plaintiff's products liability action arising from purchase of defendant's product in New York).

Although we have found no New York state precedent addressing the scope of section 302(a)(1) in the same circumstances as those present here, we find support for our position in Judge Lasker's analysis of analogous facts in *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742 (S.D.N.Y. 1977), *aff'd mem.*, 573 F.2d 1288 (2d Cir. 1978). In that case, defendants sent a letter to plaintiff threatening to sue for violation of the federal antitrust laws and breach of contract with respect to plaintiff's marketing of defendants' film. Plaintiff responded by instituting suit in the United States District Court for the Southern District of New York seeking a declaratory judgment that in marketing the film it

had not violated the defendants' rights. Plaintiff premised jurisdiction on the "transacting business" prong of section 302(a)(1) and pointed to defendants' major contacts with New York: (1) negotiations between defendants' attorneys/accountants and plaintiff's agents regarding other film contracts, and (2) a settlement discussion between defendants and the chairman of plaintiff's board of directors. Six days after plaintiff commenced its New York action, defendants followed through on their "threatening" letter and instituted suit in California federal court.

Due to his doubt that plaintiff had sustained its burden of showing that the New York courts could properly exercise section 302(a)(1) personal jurisdiction over the defendants, Judge Lasker stayed the New York action pending resolution of the California lawsuit. After reviewing the purpose of section 302 and its construction by the New York state courts, Judge Lasker stated that:

> [W]e doubt that a liberal construction [of N.Y.Civ.Prac.Law § 302(a)(1)] should be given where a New York domiciliary seeks to require non-domiciliaries to appear in the state to permit plaintiff to establish that it has not injured the out-of-staters; as a matter of law, it would be difficult, without clearer guidance from the state courts, to find that plaintiff's cause of action arose out of the defendant's within-the-state transactions.

*Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. at 750.

We encounter similar difficulty finding a sufficient nexus between the present defendant's shipment of goods to New York and plaintiff's defensive declaratory judgment action. The New York Court of Appeals' recent emphasis on the importance of the nexus requirement in applying section 302(a)(1), *see, e.g., McGowan v. Smith,* 52 N.Y.2d at 272, 437 N.Y.S.2d at 645, 419 N.E.2d at 323, reinforces our belief that *Columbia Pictures Industries* correctly interprets New York law.

Turning next to Menzies' "cease and desist" letter, we may assume for present purposes that Beacon's cause of action is based in part on this letter sent to Beacon at its New York offices. This "cease and desist" letter contributed to the creation of a sufficient controversy to warrant a declaratory judgment action. *See Chesebrough-Pond's, Inc. v. Faberge, Inc.,* 666 F.2d 393, 396 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 294, 74 L.Ed.2d 277 (1982); *Blackman v. Hadron, Inc.,* 450 F.2d 781, 782 (2d Cir.1971) (per curiam). However, it does not follow that the cause of action "arises" from the letter within the meaning of section 302(a)(1). For Menzies' letter to constitute a "transaction of business" subjecting her to section 302(a)(1) jurisdiction, " 'it is essential in each case that there be some act by which the defendant purposefully avails [herself] of the privilege of conducting activities within the forum State,' thus invoking the benefits and protections of its laws ...." *George Reiner and Co. v. Schwartz,* 41 N.Y.2d at 651, 394 N.Y.S.2d at 846, 363 N.E.2d at 553 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)); *accord McGowan v. Smith,* 52 N.Y.2d at 272, 473 N.Y.S.2d at 645, 419 N.E.2d at 323. It is difficult to characterize Menzies' letter alleging infringement in an unspecified locale and threatening litigation in an unspecified forum as an activity invoking the "benefits and protections" of New York law.

Menzies' contact with New York is deficient in both quality and degree and thereby fails to support section 302(a)(1) jurisdiction. New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York. *See Katz & Son Billiard Products, Inc. v. Correale & Sons, Inc.,* 20 N.Y.2d 903, 904, 285 N.Y.S.2d 871, 871–72, 232 N.E.2d 864, 865 (1967); *L.F. Rothschild, Unterberg, Towbin v. McTamney,* 89 A.D.2d 540, 540–41, 452 N.Y.S.2d 630, 631 (1st Dep't 1982), *aff'd mem.,* 59 N.Y.2d 651, 463 N.Y.S.2d 197, 449 N.E.2d 1275 (1983); *Findlay v. Duthuit,* 86 A.D.2d 789, 790, 446 N.Y.S.2d 951, 953 (1st Dep't 1982); *cf. Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 340–41, 256 N.E.2d 506, 508 (1970) (approving *Katz & Son Billiard Products, Inc.'s* holding that "where a defendant merely telephones a single order from outside the state," section 302(a)(1) jurisdiction does not lie, but finding sufficient transaction of business where defendant "was receiving and transmitting bids over an open telephone line and was an active participant in an auction held here"). It is also apparent that Beacon's receipt of Menzies' letter in New York cannot be characterized as purposeful activity by Menzies in New York. Although the "transaction of business" must be determined by the facts of the particular case, it is significant that New York courts have refused to sustain jurisdiction over defendants with more extensive forum contacts than Menzies had here. *See, e.g., Presidential Realty Corp. v. Michael Square West, Ltd.,* 44 N.Y.2d 672, 673–74, 405 N.Y.S.2d 37, 38, 376 N.E.2d 198, 199 (1978) (in action on contract, defendant's agent signed modification agreement in New York); *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d at 382, 283 N.Y.S.2d at 37–38, 229 N.E.2d at 607 (in action on contract, defendant's agent met with plaintiff in New York to discuss contract compliance); *Bankers Commercial Corp. v. Alto, Inc.,* 30 A.D.2d 517, 289 N.Y.S.2d 993, 994 (1st Dep't 1968) (defendant conducted settlement discussions with plaintiffs in New York).

Accordingly, on the present record, we conclude that Menzies' shipment of goods into New York is not sufficiently related to Beacon's cause of action and that Menzies' "cease and desist" letter does not constitute a "transaction of business" within New York sufficient to support the exercise of section 302(a)(1) long-arm jurisdiction.

## B. *Summary Judgment on the Merits*

If the district court finds personal jurisdiction over Menzies after further proceedings, further consideration of the merits will be necessary.

The district court erred in failing to give prior notice to the parties before converting Menzies' motion to dismiss into a motion for summary judgment. Menzies grounded her motion to dismiss, *inter alia,* on the defense of failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(6). On a 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, *and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.*" Fed.R.Civ.P. 12(b) (emphasis added). Rule 56 requires that the parties be given at least ten days notice of conversion of a Rule 12(b)(6) motion so that they may present relevant materials. *See* Fed.R.Civ.P. 56(c). We have strictly enforced the ten day notice rule on other occasions, *see, e.g., In re Bristol Industries Corp.,* 690 F.2d 26, 28 (2d Cir.1982); *Winbourne v. Eastern Air Lines, Inc.,* 632 F.2d 219, 223 (2d Cir.1980), and find ample reason to do so here.

Notice is particularly important when a party is proceeding *pro se* and may be unaware of the consequences of his failure to offer evidence bearing on triable issues. *See Madyun v. Thompson,* 657 F.2d 868, 876–77 (7th Cir.1981); *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975) (per curiam); *Hudson v. Hardy,* 412 F.2d 1091, 1094 (D.C.Cir.1968) (per curiam). Although the district court alluded to the possibility of a judgment on the merits at the close of the April hearing, it did not give the type of unequivocal notice to which a *pro se* litigant is entitled. Rather, at this April hearing the district court interposed for the first time its request that the parties present exhibits representing their respective products. Menzies, who arrived at the hearing with the belief that a motion to dismiss was to be argued, was only able to produce an advertisement depicting and describing the "Sauna Suit." Although in the early stages of the hearing the court invited Menzies to provide it with a sample of her product, the court later noted that the sample was not essential and that it had "a very good

understanding of what your [Menzies'] product looks like." At no time prior to, during, or after the hearing did the court give the parties notice that it intended to treat Menzies' motion to dismiss as a motion for summary judgment. The court's equivocal request for the sample and its subsequent statement at the hearing's close that it was "going to take care of your [Menzies'] case on the merits" did not constitute sufficient notice of the conversion of the motion to dismiss. Nor did these statements apprise Menzies of the steps she should have taken to submit rebutting evidence. Sufficient notice must be more explicit. As the United States Court of Appeals for the District of Columbia Circuit held:

> [B]efore entering summary judgment against [this *pro se*] appellant, the District Court, as a bare minimum, should have provided him with fair notice of the requirements of the summary judgment rule. We stress the need for a form of notice sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required.

*Hudson v. Hardy,* 412 F.2d at 1094; *accord Madyun v. Thompson,* 657 F.2d at 877. Requiring such notice is in keeping with the special solicitude which the courts should afford *pro se* parties.

Menzies was clearly prejudiced by the failure to afford her notice. The crucial issue in determining a claim of common law trademark infringement is whether there is a " 'likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.' " *Spring Mills, Inc. v. Ultracashmere House, Ltd.,* 689 F.2d 1127, 1129 (2d Cir.1982) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979)). Menzies was not afforded any opportunity to adduce evidence on the issue of consumer confusion and she now raises legitimate objection to the district court's factfindings. For example, the court determined that the Saunette Suit is

always sold with a Beacon label prominently displayed. On appeal Menzies has vigorously disputed this finding. Such facts are obviously significant to the issue of consumer confusion. *See Spring Mills, Inc. v. Ultracashmere House, Ltd.,* 689 F.2d at 1130; *McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1133 (2d Cir.1979). Accordingly, we reverse the entry of summary judgment.

### III

We remand for further proceedings on the issue of personal jurisdiction and, if necessary, on the merits. Until a full evidentiary hearing or a trial on the merits is held, Beacon need only set forth prima facie evidence of personal jurisdiction. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d at 904; *Visual Sciences, Inc. v. Integrated Communications Inc.,* 660 F.2d 56, 58 (2d Cir.1981); *United States v. Montreal Trust Co.,* 358 F.2d 239, 242 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). While we may doubt whether Beacon's jurisdictional allegations in its complaint and counsel's conclusory statements at the hearing rise even to the level of prima facie evidence, *see Socialist Workers Party v. Attorney General,* 375 F.Supp. 318, 322 (S.D.N.Y.1974), Beacon nonetheless should be afforded an opportunity to present further proof. Both parties showed some confusion over the purpose of the April 2 hearing and little time was devoted to the crucial jurisdictional issue.

Additional procedural confusion may also have resulted from the untimeliness of Menzies' "motion to dismiss" for lack of personal jurisdiction which was served *after* her answer. Fed.R.Civ.P. 12(b) requires that "a motion making any of these defenses shall be made before pleading if a further pleading is permitted." However, as Menzies raised the jurisdictional defense in her answer and Beacon never objected on the grounds of untimeliness or prejudice, this minor procedural defect by a *pro se* litigant should not prevent consideration of the jurisdictional issue on remand. Judicial economy will be served by such treatment. *See Majerus v. Walk,* 275 F.Supp. 952, 955 (D.Minn.1967) (permitting motion to dismiss for lack of personal jurisdiction to be made four days after answer in order to prevent "wasteful proceedings and futile exercises in discovery if it [is] determined at the opening of the trial that the defense [is] valid"); *see also In re Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 398, 413 (E.D.Pa.1981). Because the untimeliness of the motion contributed to the procedural confusion at the hearing below, Beacon should receive opportunities for discovery on the jurisdictional issue and be allowed to present evidence at a formal hearing on the motion to dismiss for lack of jurisdiction.

In reversing the judgment we also vacate the district court's permanent injunction against litigation of the California action. The vacating of the injunction is without prejudice to Beacon's refiling of a request for injunctive relief if personal jurisdiction over Menzies in New York is sustained. *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir.1974). We note, however, that "[a] *prima facie* showing of jurisdiction will not suffice ... where plaintiff seeks preliminary injunctive relief. A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." *Visual Sciences, Inc. v. Integrated Communications Inc.,* 660 F.2d at 59.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.