OPINION OF THE COURT
John D. Capilli, J.
Petitioner filed a petition, on February 28, 1986, alleging that his father committed family offenses against him and is seeking an order of protection. The petition contains allegations of harassment and disorderly conduct set forth infra. Respondent, by notice of motion, seeks dismissal of the petition, stating that the court lacks both personal and subject matter jurisdiction.
Respondent states that he was served by mail at his home *376 in St. Petersburg, Florida, and that the court should not be entertaining petitions for an order of protection when the respondent is "half a continent away”. Distance is not a basis for dismissal. A person in this State can be farther away from someone in Nassau County than someone in another State (e.g., New Jersey) and such would not be a basis for dismissal if a family offense occurred.
With regard to paragraph 3 (b) of the petition, the court dismisses such allegation as it fails to state a cause of action stating a family offense. The petition states that "respondent came to petitioner’s home unannounced while petitioner was not at home. Respondent was waiting at petitioner’s address when petitioner arrived home”. Even if these acts were proven, the court finds that there was nothing unlawful done by respondent that rises to the level of disorderly conduct.
The allegations in paragraph 3 (a), wherein petitioner claims that respondent has threatened petitioner on the phone by telling him he will burn down his house and come by with a machine gun and shoot up petitioner’s house; that respondent told petitioner that "he was about to snap and then could not control himself’; and that respondent sometimes calls petitioner several times in one day and at times threatens to murder petitioner, state a cause of action. Clearly, on these facts the petitioner could prove that they rise to the level of harassment, pursuant to the Penal Law, if all the elements could be proven. In a motion to dismiss, the court must assume they could be and the requisite intent can be proven.
Assuming, arguendo, that all the alleged acts set forth in paragraph 3 (a) were the result of telephone calls made by respondent from Florida to petitioner in New York, this court could possibly assume jurisdiction. (The petitioner does not state that the calls were made from Florida and no proof on such issue has yet been offered.) Pursuant to Family Court Act § 818, petitioner may proceed in the county in which the act referred to occurred. Though the respondent may have made the phone calls from Florida, the act of harassment occurred when the phone rang in petitioner’s home and respondent’s words were heard by petitioner in his home in Nassau County.
Pursuant to CPL 20.60 (1), "An oral or written statement made by a person in one jurisdiction to a person in another jurisdiction by means of telecommunication, mail or any other method of communication is deemed to be made in each such jurisdiction.” The intent of the statute is to guarantee that *377 extraterritoriality is not defeated by modern mechanisms. In People v Botta (100 AD2d 311), the Appellate Division found that telephone conversations in one county were deemed to be conduct occurring in both the county where the phone call was made and in which the phone call was received. In a subsequent case, the Appellate Division refused to grant prohibition to restrain prosecution of a defendant who had telephoned from Maine to New York. In Matter of Machado v Donalty (107 AD2d 1079), the court indicated that the fact that defendant made a call from outside New York State was not a bar to his prosecution upon charges based on his telephone conversation from outside the State. The court finds that it does have subject matter jurisdiction. Having found subject matter jurisdiction, the court must now turn to the issue of whether the court has acquired personal jurisdiction over the respondent.
Clearly, if the CPLR governed, this court would have personal jurisdiction under CPLR 302. The alleged acts of harassment and disorderly conduct occurred in Nassau County. If a person is injured in this State, he may pursue an action in this State pursuant to the CPLR. However, since the Family Court Act sets jurisdictional limits, in this instance the court cannot look to the CPLR for guidance.
A Family Court action can proceed only if Family Court Act § 154 (a) is complied with. Respondent has been served only by mail in Florida. All jurisdictional objections were not waived, as objections to jurisdiction were made upon respondent’s first appearance. Though certain colloquy was had on the record, respondent was given an opportunity to make his oral application as to jurisdictional defects on papers. Family Court Act § 154 (a) states: "The family court may send process or other mandates in any matter in which it has jurisdiction into any county of the state for service or execution in like manner and with the same force and effect as similar process or mandates of county courts as provided by law.” Thus, service must be done within the State, unless another section in the Family Court Act or CPLR permits out-of-State service.
Over the years, there has been a constant expansion of extraterritorial jurisdiction of Family Court process by legislative action. This legislative action has almost always been the result of the Legislature’s reaction to court decisions wherein the Appellate Division has strictly construed the language of the Family Court Act and found it controlling, rather than the more liberal CPLR long-arm statute. In Wasserman v *378 Wasserman (43 AD2d 951), the Appellate Division found that the Family Court had no jurisdiction over a respondent to enforce a Family Court support order, since he was not served in New York State. Subsequent thereto, CPLR 302 was amended to add subdivision (b) to cure this defect in Family Court and matrimonial actions and to permit the enforcement of "obligations” for support which accrued in New York State by extraterritorial service.
The next legislative reaction to the limitations of Family Court jurisdiction took place in 1982. In the unanimous decision of Matter of Nilsa B. B. v Clyde Blackwell H. (84 AD2d 295), the Appellate Division held that, though the putative father may have contacts with the State, the Family Court Act requires that he be served within the State and CPLR 301 does not give jurisdiction in a paternity proceeding served outside the State. Furthermore, CPLR 302 (b) did not provide a jurisdictional basis, as an "obligation to pay” did not accrue under the laws of New York. The court asked the Legislature to address this problem and indicated that due process would not be offended if New York State were to assert jurisdiction over putative fathers in these types of situations. Laws of 1982 (ch 506) was the attempt of the Legislature to cure the jurisdictional problems in paternity cases. By replacing the words "obligation to pay” with "claim”, the Legislature intended that the Family Court could acquire jurisdiction in extraterritorial paternity cases.
In 1983, the Legislature realized that its enactment of Laws of 1982 (ch 506) did not cure the jurisdictional problems in such paternity cases. Though amending CPLR 302 (b) to add the word "claim”, Family Court Act § 154 still restricted service to within the State when the "claim” had not yet been established. Clearly, in the marital situation the claim of a child to support from his parent is established by statute. In a paternity situation, as there is no legal relationship between father and child until an adjudication of paternity, a claim for support has not yet been established. To remedy this situation, the Legislature enacted Laws of 1983 (ch 291), which granted specific long-arm jurisdiction in paternity cases.
The legislative memorandum indicates that Family Court Act § 154 limits service to within the State. To overcome any possible objections to service of process without the State over nonresidents and nondomiciliaries, section 154 was expanded to account for long-arm jurisdiction in paternity proceedings. Family Court Act § 154 (b) clearly states that "In a proceeding *379 to establish paternity or to seek support, the court may send process without the state”.
No such amendments or prior statutory language permit long-arm jurisdiction or extraterritorial service in offense cases. When presented with an offense case where respondent is served outside the State, the court is constrained to dismiss it. (See, Matter of Brian S., 112 Misc 2d 561 [This case may be distinguished, as respondent was not only served outside of New York State, but the alleged acts also took place outside of New York State.]) As in Nilsa (supra), the court notes that it would not offend due process if this State were to entertain this type of case if jurisdiction was conferred upon it by the Legislature. Petitioner does not dispute the fact that respondent was served outside New York State* and, therefore, the petition must be dismissed and the temporary order of protection vacated.
When the family offense petition was filed, a temporary order of protection was issued by another part of this court. Petitioner at that time gave respondent’s address under a "c/ o” in Nassau County. Petitioner subsequently filed violation petitions. Normally, if the underlying petition upon which a temporary order of protection is granted is denied, the violation petitions are considered separate family offense petitions. The court hereby deems the violation petitions as separate petitions. None of those petitions were served personally upon respondent in New York State and, therefore, they are all dismissed, as enunciated above.

 There is no need for a traverse hearing. If respondent was personally served in Florida, it would still constitute process without the State, which is not in compliance with Family Court Act § 154 (a) requirement of service within New York State.