■ GEORGE C. HOLNESS et al., Respondents, v MARITIME OVERSEAS CORPORATION et al., Appellants. [676 NYS2d 540] —Order, Supreme Court, New York County (Carol Arber, J.), entered October 18, 1996, denying the motion of defendant Norfolk Shipbuilding & Drydock Corporation for dismissal for lack of personal jurisdiction, and denying the motion of all defendants for dismissal for forum non conveniens, unanimously reversed, on the law and the facts, without costs, the action dismissed as to defendant Norfolk, and dismissed as to all other defendants on condition that these defendants consent to the jurisdiction of the Virginia State courts and waive the Statute of Limitations defense. The Clerk is directed to enter judgment accordingly.

Plaintiff George C. Holness is a seaman who was employed by Norfolk Shipbuilding & Drydock Corporation (Norshipco), a ship-repair concern with a drydock facility in Norfolk, Virginia, to perform repairs on the S/T *Overseas Alaska*. This ship was owned by Maritime Overseas Corporation (MOC) and Intercontinental Bulktank Corporation (IBC), both of which maintain their corporate headquarters in New York. Holness lives with his wife and child in Hialeah, Florida, but also has indicia of residence in New York.

On November 6, 1992, while working on board the vessel at Norshipco's Virginia facilities, Holness was allegedly injured due to defendants' negligence. In October 1995, he brought this negligence action in New York, pursuant to the Jones Act (46 USC, Appendix § 688).\*

Norshipco moved for dismissal pursuant to CPLR 3211 (a) (8) (lack of personal jurisdiction), or alternatively CPLR 327 (forum non conveniens). MOC and IBC also raised the defense of forum non conveniens, chiefly on the ground that if Norshipco could not be sued in New York, it would be inefficient to try the case in two separate venues against the various defendants rather than suing them all in Virginia.

With respect to jurisdiction, Norshipco contended that its only activity in New York was the solicitation of business on its behalf by Penn International Marine Agencies (PIMA), a corporation located on Staten Island, and that PIMA's activities did not amount to Norshipco "doing business" in New York. The contract between the parties was an agency agreement. PIMA agreed to supply office space, secretarial services, transportation, etc., for Norshipco personnel visiting New York on business; seek out new clients; attend bid openings and maritime functions on Norshipco's behalf in the New York area; and cover certain Norshipco accounts in other States once a year. PIMA representatives were also required to visit Norshipco in Virginia every month to coordinate marketing efforts. However, PIMA had no authority to bind Norshipco and needed its approval before making any contracts with clients.

Holness contended that this agency arrangement, even considering the limitation on PIMA's power to bind Norshipco, provided sufficient basis for jurisdiction over Norshipco under CPLR 301. In addition, he claimed that when Norshipco signed a stipulation waiving objections to any defects in service of process (in exchange for an extension of time to file an appeal), Norshipco also waived any objections to jurisdiction.

---

\* Lilly Holness joined as a plaintiff to assert a claim for loss of consortium.

Norshipco also argued that New York was an inconvenient forum because some of the witnesses lived outside New York. Since the alleged injury was sustained in Virginia, and the nurse who treated Holness resided there, Norshipco argued that Virginia would be a better forum. Norshipco did not identify any other Virginia witnesses, nor state why the nurse's testimony would be material. Neither MOC nor IBC identified any of their own potential witnesses or their states of residence. Holness pointed out that three of the out-of-State witnesses lived in Maine, Mississippi and California, respectively, and the address of the fourth was unknown (but was neither New York nor Virginia), such that Virginia would be no more convenient than New York.

The motion court found that Norshipco was "doing business" in New York through the activities of PIMA. It also found that the defendants had not met their burden of showing why the plaintiff's choice of forum should be disturbed. We disagree.

At the outset, we reject plaintiff's interpretation of the stipulation. Valid service of process, by itself, does not suffice to establish personal jurisdiction over a foreign corporation (*see, National Enerdrill Corp. v Crown Drilling*, 119 Misc 2d 162). Thus, Norshipco's agreement not to contest service does not mean that it consented to New York's jurisdiction.

"A foreign corporation is amenable to suit in New York courts under CPLR 301 if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted" (*Landoil Resources Corp. v Alexander & Alexander Servs.*, 77 NY2d 28, 33). The essential factual inquiry is whether the defendant has a permanent and continuous presence in the State, as opposed to merely occasional or casual contact with the State (*supra,* at 34).

It has often been said that "mere solicitation" of business in New York does not establish the requisite contacts between the state and the foreign defendant (*Delagi v Volkswagenwerk AG*, 29 NY2d 426, 432, *rearg denied* 30 NY2d 694; *Ziperman v Frontier Hotel*, 50 AD2d 581, 582).

PIMA's activities in New York on Norshipco's behalf "may constitute something more than mere solicitation" (*Chamberlain v Peak*, 176 AD2d 1109, 1110), but are still not enough to support jurisdiction over Norshipco under CPLR 301. In general, New York has no jurisdiction over a foreign company whose only contacts with New York are advertising and marketing activities plus representatives' occasional visits to New York (*McGowan v Smith*, 52 NY2d 268, 272; *Chamber-*

*lain v Peak, supra,* 176 AD2d, at 1110; *see also, New England Laminates Co. v Murphy,* 79 Misc 2d 1025, 1027 [no CPLR 301 jurisdiction where foreign defendant advertised in New York media, shipped goods to New York buyers and maintained two employees in-State, but contracts had to be approved by California main office and only 4% of defendant's business was from New York]).

Our finding that Norshipco is not subject to suit in New York is supported by several cases in which a plaintiff unsuccessfully claimed jurisdiction over a foreign corporation based on a third party's New York activities on the defendant's behalf. In *Savoleo v Couples Hotel* (136 AD2d 692), a New York plaintiff purchased a vacation package from Liberty Travel in Manhattan for a stay at the defendant's hotel on the Island of St. Lucia, and was injured while on vacation. He sued the hotel in New York, but the action was dismissed for lack of jurisdiction since the hotel had no office or phone number in New York:

"The mere periodic sending of corporate officers or employees into the State on corporate business is not enough to predicate a finding that a foreign corporate defendant is present for jurisdictional purposes * * *

"In addition, while Liberty Travel and other independent travel agencies in New York may make reservations and accept payments on the defendant's behalf, and thus provide services beyond mere solicitation, these limited services are not of such a nature and quality as to subject the defendant to jurisdiction under CPLR 301 [citations omitted]." (*Supra,* at 693.)

In *Miller v Surf Props.* (4 NY2d 475, 480), a New York travel agency solicited customers and transmitted requests for reservations to a Florida hotel, but had no authority to accept the reservations on the hotel's behalf (just as PIMA has no power to contract with customers for Norshipco). The agency's actions in New York did not give New York jurisdiction over the Florida hotel.

In *Laufer v Ostrow* (55 NY2d 305), New York had no jurisdiction over a foreign corporation in circumstances nearly identical to the case at bar. Like PIMA, which solicited New York ship-repair business only for Norshipco, defendant Mt. Olive was a New Jersey corporation whose sole business was to act as sales agent for Pem-Kay Furniture, a North Carolina corporation. Mt. Olive solicited sales of Pem-Kay products in New York, ran clinics for New York customers, handled their complaints and serviced their accounts (*supra,* at 312). The main issue in the case was whether *Mt. Olive* was subject to suit in New York based on these activities. The Court answered

in the affirmative, but observed that Mt. Olive's actions on its behalf would *not* suffice to subject *Pem-Kay* to New York's jurisdiction unless Mt. Olive were its subsidiary: "[A] *foreign supplier* of goods or services for whom an *independent* agency solicits orders from New York purchasers is not present in New York and may not be sued here, however substantial in amount the resulting orders" (*supra,* at 310-311; *accord, Savoleo v Couples Hotel, supra,* 136 AD2d, at 693 ["since the defendant * * * has done nothing more in New York than solicit business through independent agents, it is unfair to require it to defend a lawsuit in New York"]; *compare, Frummer v Hilton Hotels Intl.,* 19 NY2d 533, 537, *rearg denied* 20 NY2d 758, *cert denied* 389 US 923 [British hotel subject to New York jurisdiction through activities of its New York subsidiary, which had power to accept reservations]).

We also reject plaintiff's alternative contention that if Norshipco's contacts with New York are deemed insufficient to support general jurisdiction under CPLR 301, New York can assert long-arm jurisdiction under CPLR 302 (a) (1). That statute provides for specific jurisdiction over a foreign corporation which "transacts any business within the state or contracts anywhere to supply goods or services in the state", but only where the cause of action arises out of the aforesaid transaction.

Here, Norshipco did make a contract with MOC and IBC, both New York corporations, to repair their ship, but plaintiff's alleged injury and the tort action based on it cannot be said to have arisen directly out of this contract, even if the contract were considered a transaction occurring in New York. While long-arm jurisdiction under this provision is not limited to actions for breach of contract, plaintiff has failed to set forth an "articulable nexus" between his injury and the existence of the contract (*McGowan v Smith, supra,* 52 NY2d, at 272).

The court has discretion to dismiss an action on the ground of forum non conveniens where the action is jurisdictionally sound, but would be better adjudicated elsewhere. Factors to consider include the burden on New York courts, the potential hardship to the defendant and the availability of an alternative forum where the plaintiff may bring suit (*Islamic Republic of Iran v Pahlavi,* 62 NY2d 474, 479, *cert denied* 469 US 1108). Plaintiff's New York residence is an important but not dispositive factor favoring trial in New York. Even so, the fact that the transaction out of which the suit arose occurred in a foreign jurisdiction favors dismissal, especially where the defendant will consent to suit in that jurisdiction (*see, Silver v Great Am. Ins. Co.,* 29 NY2d 356, 361).

Because a key factor—the inability to join Norshipco as a defendant—was not before the motion court on account of its contrary decision as to jurisdiction, this Court should weigh the factors anew (*see*, *Highgate Pictures v De Paul*, 153 AD2d 126, 130 [on forum non conveniens motion, appellate court is not limited to reviewing motion court's decision for abuse of discretion, but instead may exercise independent discretion]).

The motion court correctly concluded that MOC and IBC had not met their burden of showing that the convenience of the out-of-State witnesses would be better served by a trial in Virginia rather than in New York, or that the testimony of the one identified Virginia witness would be material. As MOC and IBC have their office in New York, the forum is not particularly inconvenient as to these defendants themselves. Moreover, plaintiff appears to have a residence, though not a primary one, in New York.

These considerations are outweighed, however, by the fact that the unavailability of Norshipco, a defendant with a material and substantial connection to the incident on which this suit is based, would lead to duplicative and possibly inconsistent lawsuits in New York and Virginia. As the locus of the transaction, Virginia has a greater interest in adjudicating this action. It is also suggested that, under the analysis set forth in *Silver v Great Am. Ins. Co.* (*supra*), plaintiff's residence in New York is insufficient to give New York a stake in this action because the scope of his actual connection to New York is uncertain.

Federal cases suggesting that forum non conveniens dismissal is unavailable in Jones Act cases (*e.g.*, *Bartholomew v Universe Tankships*, 263 F2d 437, 443, *cert denied* 359 US 1000; *Antypas v Cia. Maritima San Basilio*, 541 F2d 307, 310, *cert denied* 429 US 1098) are inapplicable because the issue there was whether the action should be tried in a foreign *country* where remedies equivalent to Jones Act remedies might not exist. Thus, these cases are more properly understood as choice-of-law cases, not forum non conveniens cases (*Cruz v Maritime Co.*, 702 F2d 47, 48). This Court has routinely applied forum non conveniens principles to dismiss Jones Act cases which would be better litigated in another State (*e.g.*, *Lombardi v Moran Towing Corp.*, 199 AD2d 10, *lv denied* 83 NY2d 752). The Second Circuit's discussion of this issue in *Cruz* (*supra*), conclusively refutes plaintiff's interpretation of the cases on which his Jones Act argument is founded. Concur—Milonas, J. P., Rosenberger, Tom and Mazzarelli, JJ.

