FORT KNOX MUSIC, INC. and Trio Music Company, Inc., Plaintiffs,

v.

Phillip BAPTISTE, Defendant.

No. 97 Civ. 5560(JES).

United States District Court, S.D. New York.

April 18, 2001.

Abelman, Frayne & Schwab (Robert C. Osterberg, of counsel), New York City, for Plaintiff Fort Knox Music, Inc.

Silverman Shulman & Baker, P.C. (Alan L. Shulman, Jonathan J. Ross, of counsel), New York City, for Plaintiff Trio Music Company, Inc.

Philip Baptiste, Jennings, LA, Defendant, pro se.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs Fort Knox Music, Inc. and Trio Music Company, Inc. ("plaintiffs") bring the instant action seeking to prohibit defendant songwriter Philip Baptiste ("defendant") from interfering with plaintiffs' rights and copyright in the musical composition *Sea of Love ("Sea of Love")*. By Memorandum Opinion and Order dated April 27, 1999, this Court held that defendant is time-barred from asserting any right arising from his claim of sole authorship of *Sea of Love* under the U.S. Copyright Act, 17 U.S.C. § 101 (2000) *et seq.*, and enjoined defendant from commencing any action challenging plaintiffs' rights on this basis. On appeal before the United States Court of Appeals for the Second Circuit, defendant argued that this Court did not have personal jurisdiction over him as a citizen of Louisiana, and on February 7, 2000, the Second Circuit remanded to this Court for supplementation of the record regarding this issue. The following constitutes this Court's finding that personal jurisdiction was improperly asserted over defendant and that transfer to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a) is appropriate.

## BACKGROUND

Familiarity is assumed with the Court's original decision, *Fort Knox Music, Inc. v. Baptiste,* 47 F.Supp.2d 481 (S.D.N.Y.1999) (Sprizzo, J.). The following facts, however, are noted for purposes of this remand.

This action for declaratory and injunctive relief arises from several attempts by defendant to assert sole ownership over *Sea of Love* and to thereby reclaim property ownership from plaintiffs and terminate any royalty payments to named co-author George Khoury ("Khoury"). Both defendant and Khoury are residents of Louisiana, and Kamar Publishing Company ("Kamar"), plaintiffs' predecessor-in-interest, was located in Louisiana when the agreement at issue ("the Songwriting Agreement") was signed on February 3, 1959. *See* Answer dated February 25, 1997 ("Answer") at ¶ 4; Answer, Exhibit ("Exh.") 2, Songwriting Agreement at 1. Plaintiff Fort Knox Music, Inc. is a New York corporation with offices located in New York City that is engaged in the business of publishing and licensing copyrighted musical compositions. *See* Complaint dated July 28, 1999 ("Complaint") at ¶ 2. Plaintiff Trio Music Company, Inc. is a California corporation with offices in the State of California that is also engaged in the business of publishing and licensing copyrighted musical compositions. *See id.* at ¶ 3. By virtue of assignments from Kamar, plaintiffs acquired the exclusive right to administer and exploit *Sea of Love*, together with an undivided 50% copyright interest in *Sea of Love. See id.* at ¶ 8.

Among other provisions, the Songwriting Agreement contained clauses specifying that "Publisher [Kamar] agrees to pay the Writer" a percentage of proceeds from licensing and sales of records, plus "50% of the royalties earned by the musical composition [*Sea of Love* ] for public performances for profit ... licensed by the Publisher through Broadcast Music Inc." Songwriting Agreement at ¶¶ 3(a-d). The Songwriting Agreement further provided that such "earned royalties shall be computed in accordance with reports rendered to the Writer by Broadcast Music Inc." *Id.* at ¶ 3(d). Consistent with such terms, over the course of the next thirty-eight years, defendant was paid royalties by either Kamar or plaintiffs which had been originally collected by New York-based li-

censing clearinghouse Broadcast Music Inc. ("BMI").[1] *See* Complaint at ¶ 8.

Plaintiffs first learned of defendant's claim to sole authorship of *Sea of Love* on or about July 16, 1976 through a phone call from defendant and a follow-up letter. *See* Complaint at ¶ 11; Answer, Exh. 5, Letter from Plaintiff to Mr. Lester Boles dated July 16, 1976. Nearly nine years later, in January of 1985, defendant wrote to both plaintiffs and BMI, again stating that he was the sole author of *Sea of Love* and demanding that Khoury no longer receive royalties and be removed from all subsequent published versions of the composition. *See* Answer, Exh. 5, Letters from Plaintiff to Mr. Lester Boles and Mr. Mark Siklianos dated January 7, 1985. Approximately twelve years later, defendant again began writing letters to plaintiff regarding this matter, and between April 5 and June 6, 1997, defendant's agent, Kirk Menard of Act III Productions ("Menard"), wrote eleven letters to plaintiffs on defendant's behalf asserting defendant's claims of sole authorship.[2] *See* Complaint. Exh. 2, Letters from Kirk Menard to Plaintiffs and BMI.

Among other things, such letters noted that if the parties could not "resolve this matter between [them]selves, [defendant would] begin litigation against the current publishers for a change in publishing," and that "[a]ny attempt to license [*Sea of Love* ] will result in civil and/or criminal copyright infringement." *Id.* In other letters, defendant advised plaintiff that he was "reclaiming his creation," and that he was "terminat[ing] [plaintiffs'] rights granted as publisher to ... 'Sea of Love' under local, state, and federal regulations."

*Id.* Plaintiffs subsequently brought the instant action, seeking a declaration of their rights under the Songwriting Agreement and to enjoin further proceedings by defendant.

Upon remand, the. Court requested that the parties submit additional briefing to address whether personal jurisdiction was properly asserted over defendant pursuant to N.Y.C.P.L.R. sections 301 and 302(a)(3), respectively regarding whether defendant's conduct constituted a systematic and continuous course of doing business in New York or the commission of a tort from without the state causing injury within the state. *See* Order dated December 20, 2000. The Court also requested that the parties address whether this action should be properly transferred to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a). *See id.* The parties have each submitted memoranda in accordance with this Order, and in addressing the instant remand the Court has reviewed such materials and the record previously before this Court and the Second Circuit.

## DISCUSSION

■ Absent an evidentiary hearing on the matter of jurisdiction, a plaintiff bears the burden of making a *prima facie* case that jurisdiction exists. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). In assessing whether this burden has been met, a Court is to construe all pleadings and affidavits in the light most favorable to plaintiff. *See id.*

■ In a federal question case involving a non-resident of the forum state, a federal court applies the forum state's personal

---

1. BMI, however, was not a party to the Songwriting Agreement and is not a party to this suit.

2. While defendant now claims that Menard's actions were unauthorized by defendant, such argument runs contrary to defendant's Answer in which he states that his "representatives" have written numerous letters to plaintiffs regarding the instant dispute. *See* Answer at ¶ 15.

jurisdiction rules. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). In particular, two components of New York State's long-arm statute have relevance in this dispute, namely N.Y.C.P.L.R. § 301's requirement that a defendant be "doing business" in the state and N.Y.C.P.L.R. § 302(a)(1)'s requirement that a defendant "transact business" in the state.[3] Assuming that defendant's activities confer personal jurisdiction under New York's long-arm statute, the Court must further find that, consistent with the Due Process Clause of the U.S. Constitution, defendant has sufficient contacts with the forum state so that the suit does not offend "traditional notions of fair play and substantial justice." *PDK Labs*, 103 F.3d at 1110 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

*Section 301*

■ Section 301 permits a court to exercise jurisdiction over a foreign entity on any cause of action if the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990) (internal quotations omitted). To meet this standard, a defendant must be present in New York, "not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* The test is a "simple pragmatic one" which is "fact sensitive because each case is dependent on its own circumstances." *Id.* Using this test, Courts have generally focused on a defendant's maintenance of an office in New York, the solicitation of business in New York, the presence of New York accounts or other property, and the presence of New York-based employees or agents. *See id.*

■ Plaintiffs argue that defendant's relationship with BMI and its receipt of royalties from the song at issue demonstrates a continuous and systematic course of doing business in this state sufficient to assert long-arm jurisdiction. This Court finds, however, that such contacts do not warrant a finding of "presence" in New York.

At the outset, there is no allegation that defendant was ever physically present in this jurisdiction, and all negotiations regarding the Songwriting Agreement took place in Louisiana between Louisiana-based parties. Similarly, defendant has maintained no property or offices in New York, and has never employed a New York-based employee or agent. Moreover, while defendant did receive royalties from the song for many years, no evidence or allegations in the record suggest that defendant licensed the song to or received royalties from BMI or any other New York-based party. In fact, according to the Songwriting Agreement, the publisher was responsible for licensing the song to BMI, and royalties were to be paid by BMI directly to the publisher who would in turn pay defendant his share of royalties. *See* Songwriting Agreement at ¶ 2(d) ("[T]he Publisher agrees to pay the Writer ... 50% of the royalties earned by the musical composition ... as long as the public performances of the musical composition shall be licensed by the Publisher

---

**3.** Plaintiffs cannot prove that defendant meets N.Y.C.P.L.R. § 302(a)(3)'s requirement that a defendant commit a tortious act without the state that causes injury within the state, as such provision requires that plaintiff allege a cause of action based upon tort, a claim that is absent here. *See Ben Soep Co. v. Highgate Hall*, 71 A.D.2d 825, 419 N.Y.S.2d 383, 386 (1979); *Evans v. Planned Parenthood of Broome County, Inc.*, 43 A.D.2d 996, 352 N.Y.S.2d 257, 257 (1974).

though Broadcast Music Inc."); *see also id.* at ¶ (4). On the other hand, BMI, a non-party to the Songwriting Agreement, appears to have had a very limited relationship with defendant, in that BMI simply supplied defendant with a statement of the royalties due to him. *See id.* at ¶ 3(d). Such contacts with BMI certainly do not rise to the level of a systematic and continuous course of business in New York, particularly in circumstances where no credible allegation could be made that BMI was acting as defendant's agent.[4] *See Landoil Resources,* 918 F.2d at 1046 n. 12. As such, the Court may not properly assert jurisdiction under section 301.

*Section 302(a)(1)*

◼ Section 302(a)(1) provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y.C.P.L.R. § 302(a)(1). The New York Court of Appeals has held that "[e]ssential to the maintenance of a suit under [this section] is the existence of some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). Plaintiffs argue that defendant has met such standard by virtue of both his long-standing relationship with licensing-clearinghouse BMI and his persistent campaign of cease and desist letters.

Plaintiffs' argument that defendant's relationship with BMI is sufficient for this Court to confer personal jurisdiction under section 302(a)(1) is foreclosed by the Second Circuit's decision in *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757 (2d Cir.

1983). In that action, plaintiff Beacon, a New York corporation, sought a declaration that its products did not infringe various trademarks and copyrights over weight reduction equipment that were held by defendant Menzies, an individual in California. *See id.* at 759. Menzies, who sold an unspecified amount of her weight reduction equipment by mail order in New York, had also sent plaintiff Beacon a cease and desist letter, prompting Beacon's action for declaratory judgment. *See id.* at 760–61. In finding the requirements of section 302(a)(1) had not been met, the Second Circuit made particular note that Menzies' sales in New York bore no nexus to plaintiff's action for a declaration of non-infringement:

> Beacon does not allege that Menzies' shipment of goods into New York are in any way injurious to it. In fact, Menzies' shipments of goods are irrelevant to Beacon's declaratory judgment action and Beacon's cause of action would exist regardless of whether Menzies' products were sent to New York. The present controversy arose as a result of Menzies' "cease and desist" letter, not her New York commercial activity. Accordingly, we find no "articulable nexus."

*See id.* at 765. *See also Graphic Controls Corp. v. Utah Medical Products, Inc.,* 149 F.3d 1382, 1387 (Fed.Cir.1998).

As in *Beacon,* plaintiffs claim to bring the instant declaratory judgment action based on the sending of defendant's "cease and desist" letters and defendant's relationship with BMI. However, like the sales undertaken by Menzies in New York, defendant's relationship with BMI is largely tangential to this declaratory judgment action because the action would exist regard-

---

4. Similarly, while one of the plaintiff publishers in this action is based in New York, plaintiffs have made no allegation that this New York-based plaintiff paid defendant any of the monies due to him or in any other way engaged defendant in a systematic and continuous course of business.

less of whether BMI served as the licensing clearinghouse for *Sea of Love*, or whether BMI engaged in royalty collection in New York or in any other jurisdiction. This Court accordingly finds that plaintiffs have failed to demonstrate a proper nexus between the instant action and defendant's relationship with BMI, which could serve as a sufficient basis for the exercise of personal jurisdiction over defendant.[5]

The Court similarly finds plaintiffs' argument that defendant has transacted business in the state by sending multiple cease and desist letters to defendants to be without merit. The Second Circuit has been clear that a cease and desist letter alone is insufficient to confer jurisdiction under section 302(a)(1). Rather, "it is essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities in the forum state thus invoking the benefits and protections of its laws." *Beacon*, 715 F.2d at 766. In

particular, "[i]t is difficult to characterize [a] letter alleging infringement in an unspecified locale and threatening litigation in an unspecified forum as an activity invoking the 'benefits and protections' of New York law." *Id.* While defendant's letters here were admittedly forceful and numerous, such letters in no way specified New York as an appropriate forum for resolution of the dispute or otherwise sought the protection or benefit of New York laws. As such, this Court may not appropriately exercise its jurisdiction on this basis.[6]

### Transfer of Venue

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* Several courts have found transfer particularly appropriate in circumstances where there is a substantial

**5.** While plaintiffs point to several cases in this Court which have found licensing of songs through BMI or other clearinghouses sufficient to confer personal jurisdiction, each is distinguishable. *See Linzer v. EMI Blackwood Music, Inc.*, 904 F.Supp. 207 (S.D.N.Y.1995); *Meyer v. Sharron*, No. 86 Civ. 9291, 1986 WL 8311 (S.D.N.Y. July 24, 1986); *Greenky v. Irving Music Inc.*, No. 80 Civ. 2776, 1981 WL 1370 (S.D.N.Y. July 13, 1981). In particular, the Courts in *Meyer* and *Greenky* did not address any issue related to the nexus requirement of section 302(a)(1), and in *Greenky*, BMI was an actual party to the infringement dispute, making obvious the nexus between the action and the conduct which gave rise to the complaint. *See Meyer*, 1986 WL 8311 at *2; *Greenky*, 1981 WL 1370 at *2. Similarly, *Linzer*, while factually analogous to this action, discusses the nexus requirement but omits any reference to the Second Circuit's ruling in *Beacon*. *See Linzer*, 904 F.Supp. at 214–15. Moreover, the *Linzer* Court independently found that defendant's relationship with BMI met the nexus requirement because it was relevant to plaintiff's claim of tortious

interference with contract, a claim not present in this dispute. *See id.*

**6.** Plaintiffs' argument is also heavily undercut by the Second Circuit's decision in *PDK Labs*. In *PDK Labs*, also a defensive declaratory judgment action, the Court found that while defendant's cease and desist letters alone were insufficient to confer jurisdiction, defendant's policy of using such letters to seek investments and negotiate royalty agreements with alleged patent violators was sufficient to constitute the transaction of business under the long-arm statute. *See PDK Labs*, 103 F.3d at 1109. Of course, here, plaintiffs have made no allegation regarding defendant's course of conduct that suggests such letters were used for any purpose other than to claim his alleged rights to the contested song. *Accord Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 196 (1st Cir.1980) (noting the "legitimate concern" that subjecting copyright, patent, or trademark holders to personal jurisdiction for sending cease and desist letters would adversely affect the assertion of legal rights and discourage out-of-court settlements).

**512**

question as to whether a defendant is subject to their jurisdiction. *See, e.g., Datasouth Computer Corp. v. Three Dimensional Tech., Inc.,* 719 F.Supp. 446, 453 (W.D.N.C.1989); *Terukuni Kaiun Kaisha, Ltd. v. C.R. Rittenberry and Assocs., Inc.,* 454 F.Supp. 418, 422 (S.D.N.Y.1978). Although a motion by one of the parties is ordinarily required for transfer, a district court may consider the possibility of transfer *sua sponte,* particularly when the parties have been given an opportunity to be heard prior to transfer. *See Lead Indus. Ass'n, Inc. v. Occupational Safety and Health Admin.,* 610 F.2d 70, 79 n. 17 (2d Cir.1979); *Nwanze v. Philip Morris Co.,* No. 97 Civ. 7344, 1999 WL 292597 at *3 (S.D.N.Y. May 10, 1999).

Here, as discussed above, real questions exist as to whether this Court can properly exercise jurisdiction over defendant given his relatively minor contacts with the forum state. As such, upon requesting that the parties brief the issue of the appropriateness of transfer, and upon having fully considered the arguments raised by the parties with respect to this issue, the Court finds that transfer of this action pursuant to 28 U.S.C. § 1404(a) to the Western District of Louisiana would most appropriately serve the interests of justice. While the parties have admittedly expended significant effort in litigating this action in the instant forum, transfer at this juncture is necessary to ensure that the Court and the parties do not expend even greater judicial resources in further addressing an issue collateral to the merits of the underlying dispute and which could be challenged on appeal. Such conclusion is particularly warranted in the circumstances present here because there is no dispute that jurisdiction would be proper in Louisiana, and the issues to be addressed by the Western District are narrow in scope and have been previously addressed by this Court.

## CONCLUSION

For the foregoing reasons, the Court hereby vacates its Memorandum Opinion and Order dated April 27, 1999, and directs that the Clerk of the Court close the above-captioned reference and transfer this action to the Western District of Louisiana.

It is **SO ORDERED**.