**WORLD SKATING FEDERATION,**
Plaintiff,

v.

**INTERNATIONAL SKATING UNION**
and Ottavio Cinquanta,
Defendants.

No. 03 Civ. 9800(JES).

United States District Court,
S.D. New York.

Feb. 8, 2005.

Milberg Weiss Bershad & Schulman LLP, New York, NY (Melvyn I. Weiss, Michael M. Buchman, Ann M. Lipton, of counsel), for plaintiff.

Schulte Roth & Zabel LLP, New York, NY (Alan R. Glickman, Mary M. Rosewater, Gregory P. Asciolla, Cristina De Alba, of counsel), for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

■ Plaintiff, World Skating Federation ("WSF" or "plaintiff"), brings this antitrust action to recover for the allegedly monopolistic behavior of defendants, International Skating Union ("ISU"), and its president, Ottavio Cinquanta, (collectively "defendants"), in the field of international figure skating. Defendants bring this motion to dismiss plaintiff's Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), respectively, as well as on forum non conveniens grounds. Because this Court finds that it does not have personal jurisdiction over the defendants and because it is not satisfied that such jurisdiction exists in the alternative fora suggested by plaintiff, the Court grants defendants' motion and dismisses plaintiff's Complaint.[1]

## BACKGROUND

In the wake of the judging scandal that marred the figure skating competition at the 2002 Winter Olympics in Salt Lake City, Utah, a number of participants in the sport, including athletes, coaches, and judges, decided to form the WSF, a "not-for-profit international sports federation incorporated in the state of Nevada."[2] See Compl. ¶¶ 2, 14, 27, 33. Announcing its existence on March 25, 2003 at a Washington, D.C. press conference, the WSF promulgated as its goal the restoration of "merits-based competition to figure skating events," id. ¶ 2, which it sought to achieve by persuading the International Olympic Committee ("IOC") "to recognize the WSF as the international federation for the sport of figure skating," id. ¶ 33. That distinction currently belongs to the ISU, "an association formed under the laws of Switzerland." Id. ¶¶ 15, 26.

Recognition by the IOC brings with it a number of benefits. IOC-recognized governing bodies "oversee and administer" their specific sports, id. ¶ 15, "provide judges and officials for the Olympic Games," id. ¶ 26, and establish eligibility requirements for athletes wishing to compete in "World and Olympic competitions," id.

Plaintiff contends that ISU has exploited this last perquisite in order to maintain its

---

1. This Court may, in cases where the furtherance of "judicial economy and restraint" so counsel, decide issues of personal jurisdiction before tackling more complicated issues of subject matter jurisdiction. *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2d Cir.1996). This is such a case.

2. Defendants contend that statements made in WSF's Constitution render it a Swiss entity subject to Swiss law. *See* Defs.' Mem. at 1, 9; Decl. of Jean–Cédris Michel, dated March 25, 2004, ¶¶ 11–12. Plaintiff disagrees. *See* Pl.'s Mem. at 33; Decl. of Ronald T. Pfenning, dated May 28, 2004, ¶¶ 2–3. Because of this Court's ruling that the Complaint must be dismissed for lack of personal jurisdiction over defendants, it need not decide this issue.

stranglehold over the sport of figure skating. *Id.* ¶¶ 40–45.

According to plaintiff, following the creation of the WSF defendants engaged in behavior designed to "virtually eliminate[ ] the ability of potential competing organizations to sponsor skating competitions." *Id.* ¶ 41. Defendants issued letters and press releases which indicated that any ISU member "who would join the WSF, or support or endorse its activities" would be acting "against the integrity, the exclusive role and interests of the ISU" in "breach of the ISU Constitution and Regulations." *Id.* ¶ 35.a. Such a breach constituted a "breach of eligibility rules," *id.* ¶ 35.c., which the ISU warned members could result in punitive actions, *id.* ¶ 35.e., loss of eligibility, *id.* ¶ 35.f., and withdrawal of honorary lifetime awards, *id.* ¶ 35.g. Since the ISU determines the eligibility of athletes and judges to compete in Olympic events, plaintiff contends that ISU's actions have meant that "individuals who hope to participate in events on [the Olympic] level cannot participate" in WSF-sanctioned competitions, thus relegating the WSF to the use of ineligible skaters and judges. *Id.* ¶¶ 41, 43.

Along with this power to coerce skaters and judges into not participating in WSF events, WSF contends that defendants use their control over international figure skating to maintain a monopoly over the marketing and television rights in the sport. *Id.* ¶¶ 42–44. ISU sponsors a number of skating events in the United States, including competitions held in Washington, D.C., New York, Pennsylvania, and Colorado. *Id.* ¶ 24. Defendants benefit from ticket sales, merchandising, and television coverage of these events. *Id.* ¶¶ 38–39. Plaintiff contends that despite the exorbitant fees charged by ISU for the television rights, allegedly in order to provide for "kickbacks" for defendant Cinquanta, television networks will not do business with WSF or other entities for fear of being blacklisted by ISU. *Id.* ¶¶ 29–31, 42, 44.

Plaintiff commenced this action by Complaint dated December 9, 2003. Seeking injunctive relief and monetary damages, plaintiff alleges that defendants were unjustly enriched, engaged in, attempted to engage in, or conspired to engage in monopolization in violation of 15 U.S.C. § 2, and engaged in restraint of trade in violation of 15 U.S.C. § 1.

Defendants moved to dismiss this action, arguing, among other things, that this Court does not have personal jurisdiction over them. After Oral Argument on defendants' Motion, which was held on August 9, 2004, the Court requested that the parties submit letter briefs on the issue of long-arm jurisdiction in the District of Columbia. *See* Order, dated Aug. 9, 2004. Plaintiff submitted a letter dated August 30, 2004, Letter of Michael M. Buchman ("Buchman Letter"), and defendants submitted a response, Letter of Alan R. Glickman, dated Sept. 20, 2004.

## DISCUSSION

■ On a motion to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), in which no discovery on the issue has been taken, "plaintiff bears the burden of making a *prima facie* case that jurisdiction exists." *Fort Knox Music, Inc. v. Baptiste,* 139 F.Supp.2d 505, 508 (S.D.N.Y. 2001); *see also Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990). Plaintiff need only make "legally sufficient allegations of jurisdiction," and the court must "assume[ ] the truth of the plaintiff's factual allegations," *Ball,* 902 F.2d at 197, and view its affidavits "in the light most favorable to [it]," *Fort Knox Music, Inc.,* 139 F.Supp.2d at 508; *see also Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

Here, plaintiff points to two separate bases for personal jurisdiction over defen-

dants—section 12 of the Clayton Act, which governs service and confers jurisdiction over corporate antitrust defendants, and the New York long-arm statute, N.Y. C.P.L.R. 302. Aware that neither of these bases may be found to be sufficient to sustain personal jurisdiction, plaintiff alternatively requests transfer, pursuant to 28 U.S.C. § 1406, to the federal district court for either the District of Columbia or for Colorado. *See* Pl.'s Mem. at 32–33; Buchman Letter at 1–5.

■ Section 12 of the Clayton Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. Although section 12 is not without its ambiguities,[3] it is clear that the provision is directed only to corporations and that it does not apply to other entities that simply share common attributes with corporations.[4] *See* 15 U.S.C. § 22; *Kingsepp v. Wesleyan Univ.*, 763 F.Supp. 22, 25

& n. 1, 26 (S.D.N.Y.1991) (refusing to apply section 12 to a trust that had "some of the attributes of a corporation"); *McManus v. Tato*, 184 F.Supp. 958, 959 (S.D.N.Y.1959) (Weinfeld, J.) (determining that the text of the Clayton Act compelled the strict interpretation of section 12).

■ Here, despite identifying ISU as "an association formed under the laws of Switzerland," Compl. ¶ 15, plaintiff argues that ISU should be considered a corporation under section 12 because its "structure is far more akin to that of an American corporation than to that of an American association," Pl.'s Mem. at 29; *see* Decl. of Flurin Peter von Planta, dated June 4, 2004 ("von Planta Decl.").[5]

Plaintiff's argument is meritless. Section 12 as written, and as interpreted, does not apply to entities that simply share common attributes with corporations. It applies only to corporations. Indeed, plaintiff itself describes ISU as an "association," Compl. ¶ 15, and, despite indicating that ISU maintains some of the attributes of a corporation, *see* von Planta Decl. ¶¶ 13–14, plaintiff simply has not convinced this Court that "corporation," as understood for purposes of section 12, should be read to include "Swiss associations sharing some similarities with corporations."[6]

**3.** Some courts have interpreted section 12 as conferring "nationwide personal jurisdiction over corporate antitrust defendants," *Kingsepp v. Wesleyan Univ.*, 763 F.Supp. 22, 24–25 (S.D.N.Y.1991); *see The Gen. Elec. Co. v. Bucyrus–Erie Co.*, 550 F.Supp. 1037, 1041–42 (S.D.N.Y.1982), while others have determined that the personal jurisdiction conferred by the statute is limited to those "districts in which the defendant is found, is an inhabitant, or transacts business," *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.Supp. 1279, 1286–87 (S.D.N.Y.1989).

**4.** Although section 12 has been strictly interpreted, other federal statutes that apply to "corporations" have not been so construed. For example, "corporation" as used in the general venue statute, 28 U.S.C. § 1391(c),

has been interpreted to include unincorporated associations, partnerships, and trusts. *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F.Supp.2d 449, 458 (S.D.N.Y.2000) (collecting cases).

**5.** Plaintiff does not, and cannot, assert that section 12 is applicable to defendant Cinquanta.

**6.** In fact, it seems that ISU has a number of dissimilarities from corporations that other courts have considered in determining corporate status for purposes of section 12. *See* Tr. at 11–13; *Kingsepp*, 763 F.Supp. at 25 n. 1 (listing as attributes the ability to issue stock, governance by a board of directors, and ownership by shareholders).

*See, e.g., Kingsepp,* 763 F.Supp. at 25 & n. 1, 26; *cf. Kresberg v. Int'l Paper Co.,* 149 F.2d 911, 913 (2d Cir.1945). Therefore, plaintiff has failed to meet its burden of showing that its factual allegations support jurisdiction under the Clayton Act.

Absent an applicable federal grant of personal jurisdiction, a federal court must look to the rules of the forum state to determine if jurisdiction exists. *See PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997). Plaintiff points to two provisions of the New York long-arm statute—C.P.L.R. section 302(a)(1) and (2)—which it claims confers jurisdiction over defendants.

■ C.P.L.R. section 302(a)(1) provides for personal jurisdiction over any non-domiciliary "who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a)(1). The statute confers jurisdiction only "[a]s to a cause of action arising from" such transaction of business, *id.,* which has been interpreted as requiring an "articulable nexus between the business transacted and the cause of action sued upon," *McGowan v. Smith,* 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981), such that the cause of action would not exist without the New York activities of the defendant, *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 765 (2d Cir.1983); *Fort Knox Music, Inc.,* 139 F.Supp.2d at 510–11.

Section 302(a)(2) provides for jurisdiction over non-domiciliaries "[a]s to a cause of action arising from" the commission of a "tortious act within the state." N.Y. C.P.L.R. 302(a). The provision requires that the defendant be physically present within New York at the time of the tortious act. *See Feathers v. McLucas,* 15 N.Y.2d 443, 460, 209 N.E.2d 68, 77, 261 N.Y.S.2d 8, 20–21 (1965); *see also Bensusan Rest. Corp. v. King,* 126 F.3d 25, 28–29 (2d Cir.1997). Plaintiff does not allege that defendants committed any such tortious act in New York.

Plaintiff bases jurisdiction under these provisions on two New York contacts of defendants. Plaintiff contends that defendants entered into contracts in New York with major television networks, *see* Compl. ¶¶ 13, 29–30; Pl.'s Mem. at 31–32, and that ISU sanctioned the Campbell's International Figure Skating Classic, which was held in New York on October 3, 2003, *see* Compl. ¶¶ 13, 24; Pl.'s Mem. at 30–31.

Plaintiff's arguments are without merit. With regard to the Campbell's International Figure Skating Classic, it is clear that plaintiff's injuries did not arise out of ISU's sanctioning of this event. Indeed, that event had absolutely no bearing on the ability of WSF to sanction its own competitions and is at best tangentially connected to plaintiff's cause of action. It is therefore not surprising that plaintiff has cited no cases that have sustained jurisdiction on such a slender reed, and the Court is aware of none. *See, e.g., Beacon Enters., Inc.,* 715 F.2d at 765; *Fort Knox Music, Inc.,* 139 F.Supp.2d at 510–11.

Plaintiff has also completely failed to plead that the sanctioning of the event constituted a tortious activity for which defendants were physically present in New York. *See Lehigh Valley Indus., Inc. v. Lehigh Colonial Corp.,* 527 F.2d 87, 92–93 (2d Cir.1975). Likewise, plaintiff's eleventh-hour argument that defendants need not be present in New York because they were engaged in a conspiracy with Campbell's Soup is wholly conclusory and therefore insufficient. *See id.* at 93–94 ("New York law seems to be clear that the bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of section 302(a)(2).")

Similarly, plaintiff's argument that this cause of action arose out of television con-

tracts that defendants entered into several years before the idea of forming WSF had even been conceived borders on the frivolous. *See* Tr. at 67–69; *see, e.g., Fort Knox Music, Inc.,* 139 F.Supp.2d at 510–11; *Holness v. Mar. Overseas Corp.,* 251 A.D.2d 220, 224, 676 N.Y.S.2d 540, 544 (1st Dep't 1998). In addition, plaintiff's contention, made for the first time at Oral Argument, that the contracts entered into in New York led to defendants' demand that the television networks blacklist WSF, *see* Tr. at 69–71, is not only conclusory but has not been pleaded. In fact, the one paragraph that plaintiff relies upon actually attributes the "blacklisting" to third parties and makes no allegation that defendant is responsible. Compl. ¶ 42.

Therefore, this Court finds that plaintiff's allegations fall far short of establishing a *prima facie* case for jurisdiction under the New York long-arm statute.[7]

Apparently aware of the insufficiency of its bases of jurisdiction under the Clayton Act and the New York long-arm statute, plaintiff seeks to avoid dismissal of its Complaint by having this Court transfer this action to the federal district court for the District of Columbia or Colorado pursuant to 28 U.S.C. § 1406(a).

■ Under § 1406(a) "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). A court that does not have personal jurisdiction over the defendants may nonetheless transfer under the provision, *see Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), but it may only transfer the action to a court that would have personal jurisdiction, *see In re Ski Train Fire in Kaprun, Aus., on Nov. 11, 2000,* 224 F.R.D. 543, 546–48 (S.D.N.Y. 2004), and where such transfer is found to be "in the interest of justice," 28 U.S.C. § 1406(a).

Here, plaintiff points to several contacts that defendants have with Colorado and the District of Columbia, all of which are substantially similar to the New York contacts. *See* Compl. ¶¶ 24, 35; Pl.'s Mem. at 32–33; Buchman Letter at 2–5. Given that the long-arm statutes of both jurisdictions require that the cause of action arise out of the in-state contacts of defendants, *see* Colo.Rev.Stat. § 13–1–124; D.C.Code Ann. § 13–423, it is not clear that jurisdiction can be properly found in either district. Because this Court is not convinced that this action "could have been brought" in either district, and because such a determination is best left to the courts in those jurisdictions, this Court will not transfer this action.

Moreover, this Court does not think that transferring this action would be in the interest of justice. Plaintiff seems to have been aware of the doubtful justification for jurisdiction in New York since the onset of this action, and has repeatedly raised the prospect of simply transferring this action elsewhere in order to cure these deficiencies.[8] *See* Pl.'s Mem. at 32–33; Tr. at 71–

---

7. Plaintiff does not, and cannot, argue that C.P.L.R. section 302(a)(3) applies to this case. Plaintiff has failed to plead a number of requirements for the applicability of that provision, including direct injury in New York and reasonably foreseeable consequences in the state. *See Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 325, 402 N.E.2d 122, 125, 425 N.Y.S.2d 783, 786 (1980).

8. It should also be noted that plaintiff has simultaneously argued that jurisdiction in the alternative fora it suggests might be lacking and that Rule 4(k)(2) of the Federal Rules of Civil Procedure should therefore operate to make suit in New York proper. *See* Pl.'s Mem. at 33 n.21; Buchman Letter at 5.

80. Section 1406 should not be a panacea for lawyers who bring suits in jurisdictions where they know or should know that they do not belong. *See Spar, Inc. v. Info. Res., Inc.,* 956 F.2d 392, 394 (2d Cir.1992).

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss plaintiff's Complaint shall be and hereby is granted. The Court directs the Clerk of the Court to enter judgment dismissing the Complaint.

**It is SO ORDERED.**